UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Blessed Cajuns, LLC**, et al.,  Plaintiffs,  v.  **Isabella Casillas Guzman**, et al.,  Defendants. | Case No. 4:21-cv-00677-O |

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Section 5003 of the American Rescue Plan Act of 2021 appropriates $28.6 billion to create the Restaurant Revitalization Fund, and it authorizes the Small Business Administration to distribute this money to restaurants that have been harmed by the COVID-19 pandemic. But the statute requires the Small Business Administration to "prioritize awarding grants" to businesses owned by women and racial minorities during the first 21 days of the program, which began on May 3, 2021, and the SBA's website says that it will "only process and fund priority group applicants" during this 21-day window. *See* Exhibit 1.

On May 18, 2021, the Small Business Administration issued a press release announcing that it has already received 303,000 applications for relief, representing over $69 billion in requested funds. *See* Exhibit 2. And so far, "nearly 38,000 applicants have been approved for more than $6 billion." *Id.* "Of the overall submitted applications, 57 percent came from women, veterans, and socially and economically disadvantaged business owners." *Id.*

This raises the prospect, and perhaps makes it nearly certain, that the entire $28.6 billion that Congress appropriated will be depleted before restaurants owned by white

men can even be considered for relief under the program. The Court should issue immediate injunctive relief to prevent this from happening.

## FACTS

Section 5003 of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, provides aid to restaurants and restaurant owners that have been harmed by the COVID-19 pandemic. It appropriates $28.6 billion to create the Restaurant Revitalization Fund, which is to be administered by the Small Business Administration. The statute provides that:

> During the initial 21-day period in which the Administrator awards grants under this subsection, the Administrator shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 3(n) of the Small Business Act (15 U.S.C. 632(n))), small business concerns owned and controlled by veterans (as defined in section 3(q) of such Act (15 U.S.C. 632(q))), or socially and economically disadvantaged small business concerns (as defined in section 8(a)(4)(A) of the Small Business Act (15 U.S.C. 637(a)(4)(A))). The Administrator may take such steps as necessary to ensure that eligible entities described in this subparagraph have access to grant funding under this section after the end of such 21-day period.

American Rescue Plan Act of 2021, Pub. L. No. 117-2 § 5003(c)(3)(A). This compels the SBA Administrator to confer priority upon businesses owned and controlled by "women," "veterans," and "socially and economically disadvantaged small business concerns." A "socially disadvantaged individual" is defined by statute to include:

> those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities.

15 U.S.C. § 637(a)(5). And the SBA's regulations presume, without any analysis bearing on its use in the context of the Restaurant Revitalization Fund, that the following individuals are "socially disadvantaged":

> Black Americans; Hispanic Americans; Native Americans (Alaska Natives, Native Hawaiians, or enrolled members of a Federally or State recognized Indian Tribe); Asian Pacific Americans (persons with origins

> from Burma, Thailand, Malaysia, Indonesia, Singapore, Brunei, Japan, China (including Hong Kong), Taiwan, Laos, Cambodia (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, Guam, Samoa, Macao, Fiji, Tonga, Kiribati, Tuvalu, or Nauru); Subcontinent Asian Americans (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands or Nepal); and members of other groups designated from time to time by SBA according to procedures set forth at paragraph (d) of this section.

13 C.F.R. § 124.103. An "economically disadvantaged individual," by contrast, is defined by statute to include:

> socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged. In determining the degree of diminished credit and capital opportunities the Administration shall consider, but not be limited to, the assets and net worth of such socially disadvantaged individual. In determining the economic disadvantage of an Indian tribe, the Administration shall consider, where available, information such as the following: the per capita income of members of the tribe excluding judgment awards, the percentage of the local Indian population below the poverty level, and the tribe's access to capital markets.

15 U.S.C. § 637(a)(5)(B). The SBA's website says that it will "*only* process and fund priority group applications" during the first 21 days of the program, which began on May 3, 2021, and it will only process and fund those applications if the applicant "has self-certified that it meets the eligibility requirements for a small business owned by women, veterans, or socially and economically disadvantaged individuals." *See* Exhibit 1; *see also* https://bit.ly/3tJ4FrT (last visited on May 24, 2021).

None of the Plaintiffs in this case fit within any of the preferred categories described in section 5003. *See* Declaration of Jason Smith ¶¶ 4–5, 12; Declaration of Janice Smith ¶¶ 4–5, 12; Declaration of Eric Nyman ¶¶ 4–5, 12.

Mr. and Mrs. Smith are co-owners of Blessed Cajuns, LLC, and their restaurant was hit hard by the pandemic and lost over $350,000 of gross revenue. *See* Declaration of Jason Smith ¶ 7; Declaration of Janice Smith ¶ 7. They filed an application for relief under the Restaurant Revitalization Fund on May 4, 2021, and are eligible for relief up to $187,753.17. *See* Declaration of Jason Smith ¶ 9; Declaration of Janice Smith ¶ 9. Mr. Nyman is the owner of PSBH LLC, and his restaurant was hit hard by the pandemic and lost over $800,000 of gross revenue. *See* Declaration of Eric Nyman ¶ 7.

On May 18, 2021, the Small Business Administration issued a press release announcing that it has already received 303,000 applications for relief, representing over $69 billion in requested funds. *See* Exhibit 2. And so far, "nearly 38,000 applicants have been approved for more than $6 billion." *Id*. "Of the overall submitted applications, 57 percent came from women, veterans, and socially and economically disadvantaged business owners." *Id*.

The SBA's announcement of May 18, 2021, raises the prospect that the entire $28.6 billion that Congress appropriated will be depleted before applications submitted by non-priority applicants are even eligible to be considered. Indeed, it makes it more than likely that the appropriated funds will be depleted. Plaintiffs and their restaurants respectfully seek a preliminary injunction to bring an immediate halt to these unconstitutional race and sex preferences.

## THE PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the plaintiffs must show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of

an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). All four factors support a preliminary injunction.

I. **The Plaintiffs Are Likely To Succeed On The Merits Because The Race And Sex Preferences in Section 5003 Are Patently Unconstitutional**

Racial classifications are antithetical to the Constitution, as the Supreme Court has recognized time and time again. *See Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."); *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984) (footnote omitted) ("A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race."); *see also Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (requiring the federal government to comply with the constitutional prohibition on racial on the same terms as the states). *All* government-imposed racial classifications are "presumptively invalid"[1] and "inherently suspect,"[2] and they will not be tolerated unless the government proves that a racial classification is "narrowly tailored" and "furthers compelling governmental interests." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation and internal quotation marks omitted).

Government-imposed sex classifications are also presumptively invalid, and they will not be sustained unless the government demonstrates an "exceedingly persuasive justification" for its discriminatory regime. *United States v. Virginia*, 518 U.S. 515, 531 (1996) ("Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action." (citation omit-

---

1. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979).
2. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 223 (1995) (citation and internal quotation marks omitted).

ted)); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 152 (1994) (Kennedy, J., concurring in judgment) ("[O]ur case law does reveal a strong presumption that gender classifications are invalid.").

There is no conceivable justification for the race and sex preferences in section 5003 that could satisfy the "strict scrutiny" standard or the "exceedingly persuasive justification" requirement. The COVID-19 pandemic has harmed restaurants owned by members of all races and sexes. It has infected nearly 33 million Americans without regard to their race or sex. And even if there were some unique vulnerabilities to infection among women or certain racial groups, that would have no effect on the economic misfortunes that befall a person's restaurant. Restaurants lost business during the pandemic because dine-in options were unavailable or strictly limited, and the amount of revenue lost had nothing to do with the race or sex of the restaurant owner. It is not as though white men were getting special dispensations from regulatory authorities to keep their restaurants' dining area open.

If the government thinks it can "prioritize" women and racial minorities in an effort to compensate for past discriminatory actions that have occurred in society generally, those efforts will be foreclosed by *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989). *Croson* emphatically rejected the idea that amorphous claims of past discrimination can justify a present-day racial preference in the distribution of government largesse. *See id.* at 499–506; *see also Adarand*, 515 U.S. 200 (extending *Croson*'s holding to the federal government). The statute contains no findings of past discrimination that are specific enough to warrant remedial preferences in the Restaurant Revitalization Fund, and the defendants cannot point to any other specific evidence related to the industry in question that would support such remedial action. *See Croson* at 500.

This is nothing more than a naked discriminatory preference that turns a disaster-relief program into a politicized spoils system. And in all events, there is no basis in

reason or evidence to think that precluding white men from obtaining funds from the Restaurant Revitalization Program will do anything to "remedy" past societal discrimination.

## II. The Plaintiffs Will Suffer Irreparable Harm Absent A Preliminary Injunction

The plaintiffs will suffer irreparable harm absent a preliminary injunction because the entire $28.6 billion that Congress appropriated is likely to be depleted before their applications will be eligible for consideration.

On May 12, the SBA announced that it had already received more than 147,000 applications from members of the "prioritized" groups—and these prioritized applications are "requesting a total of $29 billion in relief funds." Exhibit 3. The SBA is therefore on track to spend the entire $28.6 billion on these "prioritized" groups before applications submitted by white men can even be considered. And even if the SBA does not spend the entire $28.6 billion on these "prioritized" applications, the remaining pot of money is certain to be greatly reduced when Plaintiffs applications can finally be considered on May 24, 2021.

There is no mechanism to "claw back" this money once it is dispensed, and the defendants' sovereign immunity makes it impossible for the plaintiffs to recover damages if these unconstitutional race and sex preferences wind up excluding them from the Restaurant Revitalization Fund.

Plaintiffs are suffering additional irreparable harm because they are encountering race and sex discrimination at the hands of government officials, which inflicts irreparable harm *per se. See Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd sub nom.*, *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844 (2005) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."). This

injury cannot be remedied absent a preliminary injunction because the defendants' sovereign immunity prevents retrospective relief.

### III. The Harm to The Plaintiffs Outweighs Harms That Will Arise If a Preliminary Injunction Is Granted

The harm to the plaintiffs (and others who are being excluded from the Restaurant Revitalization Fund on account of their race and sex) outweighs any "harms" that might arise from the proposed preliminary injunction. At first glance, a fight over the distribution of government funds may seem like a zero-sum game. A remedy that prevents harm to the plaintiffs by increasing their chances of obtaining these funds will inflict an equal and opposite harm on the "prioritized" individuals whose chances of obtaining those funds is now reduced. But that analysis ignores the additional harms inflicted by the defendants' unconstitutional race and sex discrimination.

A preliminary injunction will not only alleviate the financial harms that are being inflicted the plaintiffs, it will also eliminate the injury to their constitutional right to be free from race and sex discrimination at the hands of the government. The "prioritized" individuals, by contrast, will be "harmed" if they receive less money from the Restaurant Revitalization Fund, but they will not encounter or experience any discriminatory treatment if the preliminary injunction is granted. The tips the scales decisively in favor of the plaintiffs.

### IV. A Preliminary Injunction Is In The Public Interest

The protection of constitutional rights is by definition in the public interest. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997) ("[T]he public interest clearly favors the protection of constitutional rights."); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest."); *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("[I]t is always in the public interest to prevent violation of a party's constitutional rights."). If the Court agrees that the

plaintiffs are likely to succeed on their claim that the race and sex preferences in section 5003 are unconstitutional, then a preliminary injunction will be in the public interest as well.

### V. The Plaintiffs' Motion For a Preliminary Injunction Complies With Rule 65(a) and Rule 65(c)

The attached declarations describe the immediate and irreparable injury that will result in the absence of a preliminary injunction. *See* Declaration of Jason Smith ¶¶ 6–7, 9; Declaration of Janice Smith ¶¶ 6–7, 9; Declaration of Eric Nyman ¶¶ 6–7, 9. Counsel for the defendants has already appeared in this case and will have an opportunity to respond before the Court rules.

Finally, it is not necessary to require a bond because the federal government will not suffer costs or damages from the proposed preliminary injunction. *See* Fed. R. Civ. P. 65(c).

## CONCLUSION

The motion for a preliminary injunction should be granted.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)

ROBERT HENNEKE
Texas Bar No. 24046058
Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78735
(512) 472-2700 (phone)
rhenneke@texaspolicy.com

chad@fillmorefirm.com
dusty@fillmorefirm.com

*Counsel for Plaintiffs and*
Dated: May 24, 2021                                          *the Proposed Class*

## CERTIFICATE OF CONFERENCE

I certify that I e-mailed Christopher D. Dodge, counsel for the defendants, at 8:57 P.M. pacific time on May 23, 2021, to ask his position on the motion, but I had not yet heard back from him at the time we filed.

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs and
the Proposed Class*

## CERTIFICATE OF SERVICE

  I certify that on May 24, 2021, I served this document through CM/ECF upon:

CHRISTOPHER D. DODGE
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 598-5571
christopher.d.dodge@usdoj.gov

*Counsel for Defendants*

               /s/ Jonathan F. Mitchell
              JONATHAN F. MITCHELL
              *Counsel for Plaintiffs and*
              *the Proposed Class*