UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Blessed Cajuns, LLC**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **Isabella Casillas Guzman**, et al., <br><br> Defendants. | Case No. 4:21-cv-00677-O |

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION

The motion for preliminary injunction motion is not moot because the Restaurant Revitalization Funds have yet to be fully distributed to the applicants who received the unconstitutional "priority." The defendants observe that they have begun "processing" applications received from non-priority applicants on a first-come-first-served basis, but those non-priority applicants are behind the "prioritized" applicants who have not yet *received* the money that they have applied for. It therefore remains possible for this Court to grant relief that will alleviate the unconstitutional injury that the plaintiffs (and the putative class members) have suffered: The Court can enjoin the defendants from paying any funds to the so-called "prioritized" applicants and order them to award all remaining money on a first-come-first-served basis, regardless of any "priority" that had previously been conferred on an applicant on account of race or sex. The defendants' materials confirm that it takes roughly 14 days to process applications, so many thousands of unlawfully prioritized applications are still being processed, and these applications are far ahead of the non-prioritized applications as a result of the 21-day head start. The defendants also recognize that these unconstitutionally prioritized applications may exhaust the entire $28.6 billion fund before the

plaintiffs' applications can be fully processed, which confirms the plaintiffs' showing of irreparable harm.

The case cannot be moot under these circumstances, as it remains possible for the Court to enjoin the defendants from continuing to maintain the priority status of these in-process applications. And the plaintiffs will suffer irreparable harm unless this Court promptly grants the requested injunctive relief and compels the defendants to consider *all applicants* whose applications have not yet been paid out on a first-come-first-served basis.

I. **The Case Is Not Moot Because Many Thousands Of Unlawfully Prioritized Applications Have Not Been Fully Processed And Paid, Yet They Will Still Benefit From Their Unlawful Prioritization**

The defendants argue that section 5003 expired by its own terms on May 24, so there is no "statutory provision" left to challenge and the case is moot. See Defs.' Response (ECF No. 11) at 8 ("Plaintiffs' claims are moot because the statutory provision that they challenge—the priority period subsection of § 5003—expired by its own terms approximately 24 hours after Plaintiffs filed their complaint."). The defendants are wrong. Litigants do not "challenge" *statutes*; they challenge the *behavior* of the named defendants. See *Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."). Courts do not award relief against statutes either; there is no writ of erasure that allows courts to "strike down" or formally revoke a statute that authorizes unconstitutional behavior. *See Texas v. United States*, 945 F.3d 355, 396 (5th Cir. 2019) ("The federal courts have no authority to erase a duly enacted law from the statute books, [but can only] decline to enforce a statute in a particular case or controversy." (citation and internal quotation marks omitted)). The plaintiffs are asking this Court to alter the defendants' behavior, and it remains possible for this Court to grant that relief notwithstanding the recent expiration of section 5003's priority period.

The plaintiffs are seeking an injunction that compels the defendants to cancel any unconstitutional "priority" that had been conferred upon minority and women-owned restaurants that have not yet received payouts from the Restaurant Revitalization Fund. And the declaration of SBA official John Miller confirms that it remains *possible* for the Court to grant this relief, as the SBA is *still processing* many thousands of claims that were unconstitutionally prioritized, and all non-prioritized applicants are starting behind those applications that have been "prioritized" but not yet paid.

The SBA began processing applications on May 3, 2021. Mr. Miller reports that the RRF Program Guide anticipated that processing individual claims "would take approximately 14 days per application." Miller Decl. ¶ 19. He likewise confirms that "[a]pplications are not all processed at the same rate, as some claims may be more complicated than others and take longer to review. Accordingly, a complicated, earlier-filed application may not be approved and paid out until after a later-filed, but simpler claim. But the actual order in which processing a claim begins is determined by the order in which they were received, subject only to the priority period rules." *Id*. ¶ 19.

During the 21-day priority period, the "SBA *initiated* the processing" of priority applications. *Id*. ¶ 21 (emphasis added). And on May 25, the SBA "*began* processing non-priority claims." *Id*. ¶ 22 (emphasis added). But Mr. Miller conspicuously fails to identify *how many previously prioritized applications remain in process*, waiting for completion and funding: Since Mr. Miller verifies that the anticipated processing time is 14 days, it is apparent from his declaration that on May 25, the SBA was still processing applications submitted in the prior 14 days (back to May 11), and that these prioritized applications are getting paid.

While Mr. Miller refuses to identify the number of unlawfully-prioritized applications still in the queue, the number is obviously in the many tens of thousands and could exhaust the entire pot of funds if a preliminary injunction does not issue. Indeed, the Opposition brief quotes SBA data confirming that, by May 12, 2021, the

SBA had received more than 266,000 applications, of which "[n]early half" came from priority applicants, and those priority applicants had requested $29 billion in funds, which exceeds the $28.6 billion pot of funds in the entire program. Opp. at 5. According to the defendants' brief, "[a]s of May 23, 2021, SBA had disbursed roughly $11.3 billion with approximately $17.2 billion remaining to be disbursed." Opp. at p. 6 n. 5. The SBA is therefore on track to spend the entire $28.6 billion on these "prioritized" groups before applications submitted by non-priority applicants will be fully processed. And even if the SBA does not spend the entire $28.6 billion on these "prioritized" applications, the remaining pot of money is certain to be greatly reduced.

So it does not matter that the program had stopped discriminating against non-priority applications when it comes to *initiating* the review of new applications. *See* Miller Decl., ¶ 24 (SBA will *no longer* prioritize on the basis of race or gender "when *beginning* to process an otherwise eligible claim") (emphasis added). That is because it is undisputed that the defendants are *continuing to maintain* the unconstitutional priorities that were conferred during the previous 21-day window. The lingering effects of that patently unconstitutional discrimination continue to this date and must be enjoined.

And the defendants are wrong to claim that the Plaintiffs cannot obtain any relief from an injunction. They ignore that the request for injunctive relief is targeted at three distinct ways that section 5003's race and sex preferences continue to subject the plaintiffs to discriminatory treatment:

> (a) "Prioritizing" applications according to the race or sex of the applicant;
>
> (b) Considering or using an applicant's race or sex as a criterion in determining whether an applicants will obtain relief from the Restaurant Revitalization Fund; and

> (c) Allowing any application that was previously "prioritized" on account of the race or sex of the application to keep or maintain that priority over other applications.

Proposed Order (ECF No. 7-7) at 2. The expiration of the priority period for *commencing* review does not affect any of this requested relief. An injunction will still remedy the plaintiffs' *ongoing* injury by enjoining the SBA from using race or sex in considering current fund applications and preventing the agency from allowing applications to maintain the unconstitutional priorities they received on the basis of race or sex. There are at least tens of thousands of applications that remain in the queue and billions of dollars that have not yet been allocated or disbursed. An injunction will ensure that all remaining applicants are considered through a race- and sex- neutral process.

Accordingly, the plaintiffs' request for injunctive relief cannot be moot. "A case becomes moot only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (citation omitted). So long as the plaintiffs "have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307–08 (citation omitted). In other words, a case is not moot if a party has "a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). As detailed above, the plaintiffs and the putative class have a live and significant legally cognizable interest in injunctive relief.

None of the cases that the defendants cite do anything to help their argument. Some of them hold that a case becomes moot when the statute or regulation that authorized the allegedly unlawful conduct expires on its own terms.[1] In *Spell v. Edwards*, for example, the Fifth Circuit explained that "[o]nce the law is off the books,

---

[1] *See Trump v. Hawaii*, 138 S. Ct. 377 (2017) (dismissing challenge to provisions of Executive Order that had "expired by [their] own terms"); *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (challenge to validity of an expired statute moot); *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, 404 U.S. 412 (1972).

there is nothing injuring the plaintiff and, consequently, nothing for the court to do." 962 F.3d 175, 179 (2020). But that is not the case here: Although the priority period may have passed, the plaintiffs continue to suffer injury from the discriminatory application process that can be redressed by an injunction. SBA's citation of *Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020), proves the point: Unlike the statutory amendment in *Amawi*, which directly eliminated the allegedly unconstitutional behavior, the expiration of the priority period here has not "provided the plaintiffs the very relief their lawsuit sought." *Id.* at 821.[2]

## II.   The Plaintiffs Have Shown an Irreparable Injury.

As with mootness, the SBA takes a narrow view of the plaintiffs' irreparable harm and tries to brush it aside because the priority period expired. But the plaintiffs are suffering a continuing and irreparable injury based on the lingering effects of the discriminatory application process. Suffering race and sex discrimination at the hands of government officials constitutes irreparable harm per se. *See* Prelim. Inj. Br. (ECF No. 7) at 6. "It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law, and that principle includes violation of rights under the Equal Protection Clause." *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 529 (S.D. Tex. 2020) (citation omitted and punctuation altered for clarity/cleaned up). And "[w]hen an alleged

---

2. The defendants attempt to defend the constitutionality of their actions only in a footnote. *See* Defs.' Response (ECF No. 11) at 10 n.7. None of their arguments are compatible with *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989), which prohibits governments from using amorphous claims of past discrimination to justify a present-day racial preferences. *See id.* at 499–506; *see also Adarand*, 515 U.S. 200. Their claim that the plaintiffs lack standing is equally meritless. Section 5003 confers preferences on "socially and economically disadvantaged-individuals," a category that is defined according to racial criteria. The plaintiffs have standing to seek an injunction that will bar the plaintiffs from enforcing the preferences conferred on this category of individuals. *See* Proposed Order (ECF No. 7-7) at 2.

deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable [harm] is necessary." *Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 470 (N.D. Tex. 2012).

And even apart from the fact that the underlying discrimination itself is per se irreparable harm, there is no mechanism to "claw back" any funds from the Restaurant Revitalization Fund once the SBA dispenses them. The defendants' sovereign immunity makes it impossible to recover damages if these unconstitutional race and sex preferences are allowed to continue. *See Greer's Ranch Cafe v. Guzman*, No. 4:21-CV-00651-O, 2021 WL 2092995, at *8 (N.D. Tex. May 18, 2021) (stating that the defendants "have all but guaranteed that irreparable harm will occur by way of the SBA not processing or considering an application filed by [the plaintiff in that case], absent a TRO.").

### III. The Balance of Equities and Public Interest Overwhelmingly Favor Enjoining the Ongoing Unlawful Prioritization of Applications.

The defendants ignore the fact that preventing a violation of constitutional rights is by definition in the public interest. *See* Defs.' Response (ECF No. 7) at 8. Instead, the defendants assert, with no citation of authority (because none exists), that the discriminatory scheme should be allowed to continue benefiting the favored applicants because their businesses might fail in the absence of aid. But the same can be said for every applicant. They should all have an opportunity to seek this aid without regard to racial and gender preferences.

\* \* \*

The defendants must be enjoined from processing applications and awarding relief to applicants whose applications are at the front of the queue for payment because they were unlawfully prioritized based on their race, ethnicity, or gender. The Court should grant the requested injunction.

Respectfully submitted.

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Charles W. Fillmore
H. Dustin Fillmore
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

Bradley A. Benbrook*
California Bar No. 177786
Stephen M. Duvernay*
California Bar No. 250957
Benbrook Law Group, PC
400 Capitol Mall, Suite 2530
Sacramento, California 95814
(916) 447-4900 (phone)
(916) 447-4904 (fax)
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

* *pro hac vice* application forthcoming

Dated: May 27, 2021

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Robert Henneke
Texas Bar No. 24046058
Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78735
(512) 472-2700 (phone)
rhenneke@texaspolicy.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

      I certify that on May 27, 2021, I served this document through CM/ECF upon:

CHRISTOPHER D. DODGE
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 598-5571
christopher.d.dodge@usdoj.gov

*Counsel for Defendants*

                                              /s/ Jonathan F. Mitchell
                                              JONATHAN F. MITCHELL
                                              *Counsel for Plaintiffs and*
                                              *the Proposed Class*