**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BLESSED CAJUNS LLC et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Civil Action No.  4:21-cv-00677-O** |
| | § | |
| **ISABELLA CASILLAS GUZMAN,** *in* | § | |
| *her official capacity as administrator of the* | § | |
| *Small Business Administration* **and United** | § | |
| **States Small Business Administration,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 6–7), filed May 23, 2021; Defendants' Response (ECF No. 11), filed May 25, 2021; Plaintiffs' Reply (ECF No. 13), filed May 27, 2021; Defendant's Supplemental Notice (ECF No. 14), filed May 27, 2021; Plaintiffs' Supplemental Reply to Defendants' Opposition (ECF No. 16), filed May 28, 2021; and Defendants' Reply to Plaintiffs' Supp. Reply, filed May 28, 2021. Plaintiffs seek a preliminary injunction to enjoin the Small Business Administration from distributing $28.6 billion in grants awarded to a priority group based on race or gender. Having considered the motion, briefing, and applicable law, and for the reasons set forth below, the Court **GRANTS** the motion.

## I.     BACKGROUND[1]

Plaintiffs Jason Smith and Janice Smith ("Smiths") co-own and operate Plaintiff Blessed Cajuns, LLC—a restaurant which lost nearly $350,000 of gross revenue during the COVID-19 pandemic. *See* Decl. of Jason Smith ¶ 7, ECF No. 7-4; Decl. of Janice Smith ¶ 7, ECF No. 7-5.

---

[1] The specific facts set forth in the background are derived from Plaintiffs' Appendix and Defendants' Appendix. *See* ECF Nos. 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 11-1, 14-1.

Similarly, Plaintiff Eric Nyman ("Nyman") owns and operates PSBH LLC—a restaurant which lost over $800,000 of gross revenue during the COVID-19 pandemic (collectively, "Plaintiffs"). *See* Declaration of Eric Nyman ¶ 7, ECF No. 7-6. The Smiths filed their application with the Small Business Administration ("SBA") on May 4 or 5, 2021, and Nyman filed his application on May 3, 2021, both seeking monetary relief under the $28.6-billion Restaurant Revitalization Fund ("RRF") created by the American Rescue Plan Act of 2021 ("ARPA"). *See* Pub. L. No. 117-2 § 5003; *see also* Decl. of Jason Smith ¶ 9, ECF No. 7-4; Decl. of Janice Smith ¶ 9, ECF No. 7-5; Decl.of Eric Nyman ¶ 7, ECF No. 7-6.

During the first twenty-one days of the RRF program from May 3 to May 24, the ARPA directs SBA to "take such steps as necessary" to prioritize eligible restaurants "owned and controlled" by "women,"[2] by "veterans,"[3] and by those "socially and economically disadvantaged."[4] *See* American Rescue Plan Act of 2021, Pub. L. No. 117-2 § 5003(c)(3)(A); *see*

---

[2] "Small business concerns owned and controlled by women" are those in which "(1) at least 51 percent of small business concern is owned by one or more women or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and (2) the management and daily business operations of the business are controlled by one or more women." 15 U.S.C. § 632(n).

[3] "Small business concerns owned and controlled by veterans" are those in which "(A) not less than 51 percent of which is owned by one or more veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and (B) the management and daily business operations of which are controlled by one or more veterans." 15 U.S.C. § 632(q)(3).

[4] "[S]ocially and economically disadvantaged small business concerns" are those "(i) which [are] at least 51 per centum unconditionally owned by . . . one or more socially and economically disadvantaged individuals, an economically disadvantaged Indian tribe (or a wholly owned business entity of such tribe), or an economically disadvantaged Native Hawaiian organization, or (ii) in the case of any publicly owned business, at least 51 per centum of the stock of which [are] unconditionally owned by . . . one or more socially and economically disadvantaged individuals, an economically disadvantaged Indian tribe (or a wholly owned business entity of such tribe), or economically disadvantaged Native Hawaiian organization" **and** "the management and daily business operations of such small business concern are controlled by one or more (i) socially and economically disadvantaged individuals . . . , (ii) members of an economically disadvantaged Indian tribe . . ., or (iii) Native Hawaiian organizations . . . ." 15 U.S.C. 637(a)(4)(A) (emphasis added).

Declaration of John A. Miller ¶ 16, ECF No. 11-1. The ARPA incorporates the definitions for these prioritized small business concerns from prior-issued statutes and SBA regulations. *See* 15 U.S.C. § 632(n) (defining "women"); 15 U.S.C. § 632(q)(3) (defining "veterans"); 15 U.S.C. 637(a)(4)(A) (defining "socially and economically disadvantaged") (clarified, in turn, by 15 U.S.C. 637(a)(6)(A) (defining "economically disadvantaged"); 13 C.F.R. § 124.103 (defining "socially disadvantaged individuals")).

To effectuate the prioritization scheme, SBA announced that, during the program's first twenty-one days, it "will accept applications from all eligible applicants, but only process and fund priority group applications"—namely, applications from those priority-group applicants listed in the ARPA. *See Restaurant Revitalization Fund*, U.S. Small Bus. Admin., https://www.sba.gov/funding-programs/loans/covid-19-relief-options/restaurant-revitalization-fund (last visited May 18, 2021); *see also* Decl. of John A. Miller ¶¶ 10–12, 14–15, ECF No. 11-1. Priority-group "[a]pplicants must self-certify on the application that they meet [priority-group] eligibility requirements" as "an eligible small business concern owned and controlled by one or more women, veterans, and/or socially and economically disadvantaged individuals . . . ." *See*

---

"Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. 637(a)(5). The SBA's regulations further define "socially disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities. The social disadvantage must stem from circumstances beyond their control." 13 C.F.R. § 124.103.

"Economically disadvantaged individuals are those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged. In determining the degree of diminished credit and capital opportunities the Administration shall consider, but not be limited to, the assets and net worth of such socially disadvantaged individual. In determining the economic disadvantage of an Indian tribe, the Administration shall consider, where available, information such as the following: the per capita income of members of the tribe excluding judgment awards, the percentage of the local Indian population below the poverty level, and the tribe's access to capital markets." 15 U.S.C. 637(a)(6)(A).

Decl. of John A. Miller ¶¶ 17–19, ECF No. 11-1; *see also* U.S. Small Bus. Admin., *Form 3172: Restaurant Revitalization Funding* (effective Apr. 19, 2021).[5] "[E]xcepting the prioritization period, 'all eligible applications will be funded on a first-come, first-served basis." Decl. of John A. Miller ¶ 12, ECF No. 11-1. Neither the Smiths nor Nyman qualify for priority-group status.

Just nine days into the twenty-one-day window, the SBA announced that "a total of $2.7 billion of relief funds have been distributed to 21,000 restaurants since [the Fund] opened" and that it has already received "more than 147,000 applications from women, veterans, and socially and economically disadvantaged business owners," which are "requesting a total of $29 billion in relief funds." Press Release 12-36, U.S. Small Bus. Admin., *Recovery for the Smallest Restaurants and Bars: Administrator Guzman Announces Latest Application Data Results for the Restaurant Revitalization Fund* (May 12, 2021) (available at: https://www.sba.gov/article/2021/may/12/recovery-smallest-restaurants-bars-administrator-guzman-announces-latest-application-data-results). Six days later, the SBA announced it had received 303,000 application—of which 57 percent came from prioritized business owners and 38,000 had been approved—requesting over $69 billion in fund. Press Release 21-38, U.S. Small Bus. Admin., *Last Call: Administrator Guzman Announces Final Push for Restaurant Revitalization Fund Applications* (May 18, 2021) (available at: https://www.sba.gov/article/2021/may/18/last-call-administrator-guzman-announces-final-push-

---

[5] Notably, the RRF application only incorporates the race-presumption-designation language to describe socially disadvantaged individuals. *Compare* U.S. Small Bus. Admin., *Form 3172: Restaurant Revitalization Funding* (effective Apr. 19, 2021) ("Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities. Individuals who are members of the following groups are presumed to be socially disadvantaged: Black Americans; Hispanic Americans; Native Americans (including Alaska Natives and Native Hawaiians); Asian Pacific Americans; or Subcontinent Asian Americans."); *with* 13 C.F.R. § 124.103.

restaurant-revitalization-fund-applications). At that time, the SBA had distributed $6 billion of the $28.6 billion appropriated by Congress.

With the prospect that the SBA may distribute the entirety of the $28.6 billion appropriated by Congress before applications from non-prioritized applicants, like the Smiths and Nyman, are even eligible to be processed and considered, Plaintiffs sued Defendants SBA and Isabella Casillas Guzman, in her official capacity as administrator of the SBA. *See* Compl., ECF No. 1. Shortly thereafter, Plaintiffs moved for a preliminary injunction, enjoining the use of race and sex preferences in the distribution of the RFF. *See* Mot., ECF Nos. 6–7. The motion is now ripe for the Court's consideration. *See* Resp., ECF No. 11; Reply, ECF No. 13.

## II.    LEGAL STANDARD

The Fifth Circuit set out the requirements for a preliminary injunction in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). To prevail on an application for a preliminary injunction, the movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction is not adverse to the public interest. *Id.*; *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

To qualify for a preliminary injunction, the movant must clearly carry the burden of persuasion with respect to all four requirements. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). A movant who obtains a preliminary

injunction must post a bond to secure the non-movant against any wrongful damages it suffers as a result of the injunction. Fed. R. Civ. P. 65(c).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing *Canal*, 489 F.2d at 572). A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Even when a movant satisfies each of the four *Canal* factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light*, 760 F.2d at 621.

## III. ANALYSIS

### A. Substantial Likelihood of Success on the Merits

Plaintiffs contend they are substantially likely to succeed on the merits of their constitutional challenge. *See* Mot. 1, ECF No. 7. Defendants maintain that "Plaintiffs cannot make that showing here because their claim is moot[.]" Resp. 8, ECF No. 11. Specifically, Defendants argue "the statutory provision that they challenge—the priority period subsection of § 5003—expired by its own terms approximately 24 hours after Plaintiffs filed their complaint." Resp. 9, ECF No. 11 (citing ECF No. 1; Miller Decl. ¶ 16). For the forthcoming reasons, the Court disagrees and concludes Plaintiffs claims are not moot and are likely to succeed on the merits.

"Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). "A matter is moot 'when it

is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quotations omitted)); *see also Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524–25 (5th Cir. 2008) ("If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents."). "'[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984). "The government must show that it has 'completely and irrevocably eradicated the effects' of the program's race and sex preferences." *Vitolo v. Guzman*, Nos. 21-5517/5528, at 5 (6th Cir. May 27, 2021) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

Here, Defendants contend that Plaintiffs' claims are mooted because the underlying statute "expired by [its] own terms." Resp. 8, ECF No. 11 (citing *Spell*, 962 F.3d at 179). Even assuming Defendants are not seeking to "automatically moot a case simply by ending their unlawful conduct once sued," *see Spell*, 962 F.3d at 179 (cleaned up), Defendants' characterization is factually incorrect. Having reviewed the underlying statute and regulatory framework, the Court cannot find, nor do Defendants cite, a portion of a statute or regulation dictating expiration "by its own terms," a superseding amendment to the statute or regulation, or a repeal of a statute or regulation. *See Trump v. Hawaii*, 585 U.S. ⸺, 138 S. Ct. 377 (2017) (quoting *Burke*, 479 U.S. at 363) (Because the "provisions of the Order have 'expired by [their] own terms,' the appeal no longer presents a 'live case or controversy.'"); *Amawi v. Paxton*, 956 F.3d 816, 819, 821 (5th Cir. 2020) (a statute as amended would "provide the plaintiffs the very relief their lawsuit sought"); *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) (An action "challenging a statute would become moot

by the legislature's enactment of a superseding law."). Though the priority period has ended, the RFF's administration remains in full effect.

To evade this common-sense conclusion, Defendants filed a supplemental brief to clarify for the Court the mode by which the RRF will be distributed from this point forward. *See* Supplemental Decl. of John A. Miller, ECF No. 14-1 Even accepting as true Defendants' clarification that the "SBA has reordered its processing queue based on the time that applicants submitted their applications," *Id.* ¶ 6,[6] "the program's race and sex preferences did not end with the priority phase." *Vitolo v. Guzman*, Nos. 21-5517/5528 (6th Cir. May 27, 2021). "[A]ll of the 'priority' applications that were received [and were initiated for processing] in the 21-day window are still being processed first." *Id.*; Miller Decl. ¶ 21, ECF No. 11-1 (during the priority period, the "SBA initiated the processing" of priority-group applications). The immediate effects of the program's race and sex preferences are still present; the RRF funds have yet to be fully distributed; and it remains possible for the Court to enjoin the defendants from continuing to maintain the priority status of these in-process applications. *See Los Angeles*, 440 U.S. at 631. Thus, the Court concludes Plaintiffs' claims are not moot.

The Court turns to standing and the merits. The government addresses these together in a footnote with reference to its briefing in a prior similar case before this Court, reiterating the same arguments. *See* Resp. 10 n.7, ECF No. 11 (*Greer v. Guzman*, No. 4:21-cv-651, at 16–23, ECF No. 9 (N.D. Tex. May 17, 2021)). For the same reasons outlined in *Greer* and based on the Sixth

---

[6] Defendants' briefing fails to explain how SBA Deputy Associate Administrator Miller has the authority to promulgate the policy on behalf of the SBA. Only his affidavit, unsupported by the ARPA, SBA regulations, or even RRF guidance, makes this claim about the post-priority period. Notably, the balance of Miller's statements is wholly supported by citation to the ARPA, SBA regulations, or the RRF Program Guide. Apart from these deficits, the exact regulatory framework at issue here has been challenged in this Court and in the Sixth Circuit, yet this affidavit is the first representation that the SBA intends to drop entirely its discriminatory practices after the priority period.

Circuit's similar reasoning in *Vitolo*, the Court concludes that Plaintiffs have standing and are likely to succeed on the merits of their claim that Defendants' use of race-based and sex-based preferences in the administration of the RRF violates the Equal Protection Clause of the Constitution. *See Greer v. Guzman*, No. 4:21-cv-651, at 5–14 (N.D. Tex. May 17, 2021)[7]; *see also Vitolo v. Guzman*, Nos. 21-5517/5528, at 4–14 (6th Cir. May 27, 2021).

## B. Substantial Threat of Irreparable Harm

Plaintiffs contend that they "will suffer irreparable harm absent a preliminary injunction because the entire $28.6 billion that Congress appropriated is likely to be depleted before Mr. Greer's application is eligible for consideration." Mot. 7, ECF No. 7. Defendants respond that its mootness argument *ipso facto* precludes a finding of irreparable harm. *See* Resp. 10–11, ECF No. 11. To show immediate and irreparable harm, Plaintiff must demonstrate he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *See Winter*, 555 U.S. at 22.

Here, Plaintiffs' are suffering a continuing and irreparable injury based on the direct, lingering effects of the race-based, sex-based discriminatory application process. *See infra* Part III.A. An ongoing constitutional deprivation creates a substantial threat of irreparable harm. *See Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 470 (N.D. Tex. 2012) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no

---

[7] The *Greer* ruling is attached as Exhibit 1.

further showing of irreparable [harm] is necessary."). Accordingly, the Court concludes that Plaintiffs will suffer irreparable harm absent a preliminary injunction because Plaintiffs are experiencing race and sex discrimination at the hand of government officials and the evidence submitted by Plaintiffs indicates that the entire $28.6 billion in the RRF may be depleted before Plaintiffs' applications can be considered for relief under the program. These injuries are also irreparable in light of Defendants' sovereign immunity and Plaintiffs' inability to seek damages.

### C.  Balance of Hardships and the Public Interest

The Court next considers whether the threatened injury to Plaintiffs outweighs any damage the proposed preliminary may cause Defendants and its impact on the public interest.[8] Plaintiffs argue that "preventing a violation of constitutional rights is by definition in the public interest." Mot. 8, ECF No. 7. Defendants disagree, maintaining that "[r]equiring [the] SBA to pause disbursement of funds to comply with an injunctive order risks delaying this much-needed aid" and that "[t]he public's interest in rapid disbursement of this aid dramatically outweighs providing Plaintiffs with a dead letter order." Resp. 12, ECF No. 11. Defendants' contention presupposes Plaintiffs are not likely to succeed on the merits, and a narrow preliminary injunction resolves any threat of delay. Thus, the Court concludes that the balance of equities and the public interest favors Plaintiffs.

### D.  Bond

Rule 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

---

[8] The Court considers the balance of hardships and public interest factors together as they overlap considerably. *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016).

The amount of security required "is a matter for the discretion of the trial court," and the Fifth Circuit has held district courts have discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). In determining the appropriate amount, the Court may elect to require no security at all. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011) (citing *EOG Resources, Inc. v. Beach*, 54 F. App'x 592 (5th Cir. 2002)). The Court finds no evidence that Defendants will suffer any financial loss from a preliminary injunction, so there is no need for Plaintiffs to post security in this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have met their burden of proving each of the four elements for a preliminary injunction. *See* Fed. R. Civ. P. 65. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 6–7) and **ENJOINS** Defendants Isabella Casillas Guzman and the United States Small Business Administration, and their officers, agents, servants, employees, attorneys, designees, and subordinates, as well as any person acting in concert or participation with them (1) to process and consider Plaintiffs Jason and Janice Smith's and Plaintiff Eric Nyman's applications for RRF grants as if the SBA had initiated processing of those applications at the time the applications were filed and (2) from processing or considering any RRF application filed later in time than Plaintiffs Jason and Janice Smith's application and Plaintiff Eric Nyman's application, respectively, until their applications have been processed and considered in accordance with a race-neutral, sex-neutral "first come, first served" policy.[9]

---

[9] Plaintiffs requested the following injunctive relief:

A preliminary-injunction hearing will be held on **June 3, 2021, at 9:00 A.M**. in the Eldon B. Mahon Courthouse, 501 W. 10th Street, 2nd floor courtroom, Fort Worth, Texas. Counsel for both parties are **ORDERED** to attend.

**SO ORDERED** on this **28th day** of **May, 2021, at 11:10 A.M. central time**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

from discriminating on account of race and sex in administering the Restaurant Revitalization Fund, as it relates to Plaintiff's application. This prohibition on discrimination encompasses (a) "Prioritizing" application according to the race or sex of the applicant; (b) Considering or using an applicant's race or sex as a criterion in determining whether an applicant will obtain relief from the Restaurant Recovery Fund; and (c) Allowing any application that was previously "prioritized" on account of the race or sex of the application to keep or maintain that priority over applications.

ECF No. 7-7. To the extent Plaintiffs still seek relief of this scope, they should brief the need for this relief.