IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

─────────────────────────────

BLESSED CAJUNS LLC, *et al.*,

     Plaintiffs,

v.

ISABELLA CASILLAS GUZMAN, *et al.*,

     Defendants.

Civil Action No. 4:21-cv-00677-O

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Christopher D. Dodge*
Christopher D. Dodge (MA No. 696172)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel: (202) 598-5571
Email: christopher.d.dodge@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

LEGAL STANDARD ..........................................................................................................3

DISCUSSION .......................................................................................................................4

     I.     The Original Named Plaintiffs No Longer Possess Live Claims And
           Therefore May Not Serve As Class Representatives ........................................................4

     II.    Plaintiffs Cannot Satisfy The Prerequisites For Certifying A Class
           Even With The New Named Plaintiffs ...........................................................................6

          A.     Plaintiffs have not established the existence of a sufficiently
                   numerous or ascertainable class ..............................................................7

          B.     Plaintiffs have failed to show their claims raise common questions
                   with other class members. ........................................................................9

          C.     Plaintiffs have failed to show their claims are typical of the class as a
                   whole. .....................................................................................................11

          D.     The new named Plaintiffs' claims are in conflict with the interests of
                   the proposed class. .................................................................................12

          E.     Plaintiffs have failed to show that Defendants have acted
                   or refused to act on grounds that apply generally to the class. .......................13

CONCLUSION .....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista,*
  298 F. Supp. 3d 834 (W.D. Va. 2018) ................................................................. 5

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................... 10

*Bolin v. Sears, Roebuck & Co.,*
  231 F.3d 970 (5th Cir. 2000) ....................................................................... 13, 14

*Boucher v. First Am. Title Ins. Co.,*
  No. C10-199RAJ, 2011 WL 1655598 (W.D. Wash. May 2, 2011) ..................... 7

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ............................................................................................. 3

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n,*
  624 F.3d 185 (5th Cir. 2010) ............................................................................. 13

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................................................................... 8

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) ................................................................................ 8

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez,*
  431 U.S. 395 (1977) ......................................................................................... 3, 5

*Flecha v. Medicredit, Inc.,*
  946 F.3d 762 (5th Cir. 2020) ..............................................................4, 11, 12, 13

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ........................................................................................... 11

*Genesis Healthcare Corp. v. Symczyk,*
  569 U.S. 66 (2013) ............................................................................................... 4

*Hirsch v. USHealth Advisors, LLC,*
  337 F.R.D. 118 (N.D. Tex. 2020) ..................................................................... 13

*In re Deepwater Horizon,*
  739 F.3d 790 (5th Cir. 2014) ............................................................................... 8

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.,*
  214 F.R.D. 614 (W.D. Wash. 2003) .................................................................. 14

*John v. Nat'l Sec. Fire & Cas. Co.*,
  501 F.3d 443 (5th Cir. 2007)........................................................................4, 8

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004)........................................................................13

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990)........................................................................4

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012)........................................................................4, 7

*Maldonado v. Ochsner Clinic Found.*,
  493 F.3d 521 (5th Cir. 2007)........................................................................13

*Robinson v. Tex. Auto. Dealers Ass'n*,
  387 F.3d 416 (5th Cir. 2004)........................................................................4

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)........................................................................5

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015)........................................................................7

*St. Bus. Partners LLC v. Abbott*,
  No. 1:20-CV-706-RP, 2020 WL 4274589 (W.D. Tex. July 24, 2020)........................................................................8

*Sustainable Forest, L.L.C. v. Qwest Commc'ns Int'l, Inc.*,
  No. CV 0:01-2935-CMC, 2005 WL 8146267 (D.S.C. Nov. 28, 2005)........................................................................11

*Trujillo v. UnitedHealth Grp., Inc.*,
  No. EDCV172547JFWKKX, 2018 WL 4694041 (C.D. Cal. Sept. 14, 2018)........................................................................11

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005)........................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................*passim*

*Ward v. Hellerstedt*,
  753 Fed. App'x 236 (5th Cir. 2018)........................................................................9

**Regulations**

13 C.F.R. § 124.104(c)........................................................................9

Federal Rule of Civil Procedure 5(b)(2)........................................................................15

Federal Rule of Civil Procedure 23(a)........................................................................4

Federal Rule of Civil Procedure 68 ............................................................................................5

Rule 23(b)(2) ...................................................................................................................... 13, 14

**Other Authorities**

Fed. Prac. & Proc. Civ. § 1763 (3d ed. 2005).............................................................................10

## INTRODUCTION

Plaintiffs filed this action on May 23, 2021 and on the same day moved to certify a class led by the original named Plaintiffs—Blessed Cajuns LLC, PSBH LLC, and their respective owners—on behalf of "all restaurant owners and restaurants in the United States who are encountering or who will encounter race or sex discrimination from the Small Business Administration on account of section 5003 of the American Rescue Plan Act."  Class Cert. Mot., ECF No. 4.  But there is no dispute that the original named Plaintiffs are no longer suitable class representatives—their claims are moot and they lack any outstanding injuries to redress.  Even assuming the Court retains any Article III jurisdiction over their specific claims, those Plaintiffs are no longer similarly situated to other nonpriority applicants who have yet to be paid and cannot be expected to represent their interests. The Court should therefore deny Plaintiffs' pending motion for class certification.

Recognizing that the original named Plaintiffs are no longer suitable class representatives, Plaintiffs represented at the June 3, 2021 hearing that they intended to file an amended class certification motion substituting in the new named Plaintiffs as proposed class representatives.  But Plaintiffs have yet to do so.  The Court should not address class certification until the Plaintiffs file such a new or amended motion, if at all, particularly in view of the fact that SBA continues to process nonpriority applications in the ordinary course as the RRF approaches exhaustion.

Even if the Court treated Plaintiffs' pending motion as applying to the new named Plaintiffs, it should still be denied.  Plaintiffs acknowledge both that they are presently receiving all of their requested relief from Defendants and, further, that this case will be moot in its entirety once the funds in the Restaurant Revitalization Fund ("RRF") are exhausted.  In view of these admissions, and other deficiencies in their original proposed class, Plaintiffs cannot meet their heavy burden of showing entitlement to class certification.

## BACKGROUND

Plaintiffs filed this action on May 23, 2021.  *See* Compl., ECF No. 1.  They moved for both a preliminary injunction and class certification the same day.  *See* ECF Nos. 4-7.  Defendants responded to the motion for a preliminary injunction on May 25, 2021 explaining that the case was moot—the

statutorily-prescribed priority period had concluded; the Small Business Administration ("SBA") had begun reviewing nonpriority applications in the ordinary course; and SBA had further stopped processing priority applications pending either approval from the Court or until the agency completed review of all previously filed nonpriority applications.[1]  *See* Response to PI Mot., ECF No. 11; *see also* ECF No. 11.1 ("First Miller Decl."); ECF No. 14 ("Second Miller Decl."); ECF No. 20.1 ("Third Miller Decl."); ECF No. 28.1 ("Fourth Miller Decl.").  Defendants began processing Plaintiffs' applications in the ordinary course during this time.  *See* Third Miller Decl. ¶¶ 10-11.

The Court issued a preliminary injunction applying specifically to the original named Plaintiffs on May 28, 2021.  *See* PI Order, ECF No. 18.  The order enjoined Defendants to process Plaintiffs' applications as if the SBA had initiated processing of those applications at the time the applications were filed, and further enjoined SBA from "processing or considering any RRF application filed later in time" than Plaintiffs' applications "until [Plaintiffs'] applications have been processed and considered in accordance with a 'race-neutral, sex neutral 'first come, first served' policy."  *Id.* at 11. Defendants were already in substantial compliance with the Court's order at the time it issued, as they had already commenced processing all nonpriority applications—including Plaintiffs' applications— in the ordinary course.  *See* Third Miller Decl. ¶¶ 10-11; 16.  However, to ensure compliance with the Court's order and the continued review and processing of all nonpriority applications, Defendants paid both Blessed Cajuns LLC's and PSBH LLC's full claims on June 1, 2021.  *See id.* ¶¶ 23-24.

On June 3, 2021, Plaintiffs filed an amended complaint adding two new RRF applicants— Lynds Inn LLC ("Lynds"), OCF Café LLC ("OCF"), and their respective owners—as new named Plaintiffs.  *See* Am. Compl., ECF No. 21.  Prior to being added to the case, Lynds's and OCF's RRF applications were also already actively under review by SBA.  *See* Fifth Miller Decl. ¶¶ 4-5; Third Miller Decl. ¶ 7.  OCF's application had already been deemed "fully approved" prior to the filing of the amended complaint and it subsequently had its application booked in SBA's E-Tran system on June

---

[1] As Defendants explained in the Fourth Miller Declaration, some priority applications were processed—but not ultimately paid—by SBA up until 11:35am ET on May 28, 2021.  *See* Fourth Miller Decl. ¶ 10.

7, 2021 for disbursement of funds by the Treasury Department.  *See* Fifth Miller Decl. ¶ 5.  It has, in all likelihood, already received its RRF grant.  *Id.*  Lynds's application had been under review by SBA prior to the filing of the amended complaint.  *Id.* ¶ 4.  SBA's review subsequently determined Lynds's application required corrections.  *Id.*  The application was resubmitted to SBA on June 3, 2021 and continues to be reviewed in the ordinary course.  *Id..*

On June 3, the Court held a hearing at which the parties addressed the issues of mootness, class certification, and further relief in the case.  *See generally* 6/3/21 Hrg. Tr.  Plaintiffs agreed at the hearing that they were already receiving all of their requested relief, stating that "there really is no daylight between what the government is actually doing and what [Plaintiffs] are asking for, even on a classwide basis." 6/3/21 Hrg. Tr. at 12:13-15.  And Plaintiffs further acknowledged that dismissing the case as moot will "be the appropriate disposition" once "the money is gone."  *Id.* at 13:23-14:8; *see also id.* 37:3-5 (recognizing that "mootness may be the ultimate disposition of this case"); *id.* 42:9-10 (acknowledging the Defendants "may ultimately win on the mootness question").

Nonetheless, Plaintiffs indicated that they intended to move forward with class certification. *See, e.g.*, 6/3/21 Hrg. Tr. at 9:2-4.  Recognizing that the original named Plaintiffs were no longer suitable class representatives, Plaintiffs stated that they intended to amend their class certification motion.  *See* 6/3/21 Hrg. Tr. at 5:4-8 ("So at the very least, those new proposed class representatives, their claims are not yet moot.  We have not yet amended our motion for class certification to ask for them to be named as representative plaintiffs, but we intend to do so."); *see also id.* at 42:5-8 (acknowledging that if the "new plaintiffs" are "quickly paid" then Plaintiffs "have to find another lead plaintiff to seek class certification").  Plaintiffs have yet to file a new or amended class certification motion, and their original motion remains pending.

## LEGAL STANDARD

Class actions are an exception to the ordinary course of American legal practice.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011); *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979). A putative class representative may litigate the class's claims only if he is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *Wal-Mart*, 564 U.S.

at 348-49 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  To obtain certification of a non-opt-out class under Rule 23(b)(2), as Plaintiffs seek, they must show that an ascertainable class exists and also meet the requirements of both Rule 23(a) and 23(b)(2): (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) that Defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(a), (b)(2); *see John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

The plaintiff bears the burden to prove that these requirements have been met, and its offer of proof is subject to "rigorous analysis" in light of the "claims, defenses, relevant facts, and applicable substantive law."  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (citations omitted); *see also Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004) ("To make a determination on class certification, a district court must conduct an intense factual investigation."); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

## DISCUSSION

### I.   The Original Named Plaintiffs No Longer Possess Live Claims And Therefore May Not Serve As Class Representatives

Plaintiffs moved for class certification at the outset of this action, proposing that the original named Plaintiffs—Blessed Cajuns LLC, PSBH LLC, and their respective owners—serve as class representatives.  *See* Class Cert. Mot. (proposing class led by named plaintiffs); Class Cert. Mem., ECF No. 5 (same); *see also* Compl. ¶¶ 23-29 (class action allegations).  But there is no dispute that these original named Plaintiffs are presently suffering *no injury at all*, as Defendants began processing their applications in the ordinary course and ultimately paid out their claims in full in response to the Court's injunction.  *See* Third Miller Decl. ¶¶ 10-11; 23-24.  Their claims are therefore moot and this Court lacks Article III jurisdiction over their claims.  *See  Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f the class representative lacks standing, then there is no Article III suit to begin with— class certification or otherwise."); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,'

at any point during litigation, the action can no longer proceed and must be dismissed as moot." (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990)). And even if the original named Plaintiffs possessed live claims, they no longer possess the same interest and injury as unpaid class members. *See E. Tex. Motor Freight System, Inc.*, 431 U.S. at 403 ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974))).

Plaintiffs acknowledged the need for new class representatives at the June 3, 2021 hearing, indicating that they intended to file an amended claim for class certification, though they have yet to do so. *See* 6/3/21 Hrg. Tr. at 5:4-8; 42:5-8. Accordingly, the Court should deny Plaintiffs' pending motion for class certification.[2]

Plaintiffs also suggest that Defendants have improperly attempted to "pick off" the lead plaintiffs. *See* ECF No. 22 at 2. That is not correct. Defendants began processing the applications of the original named plaintiffs in the ordinary course. *See* Third Miller Decl. ¶¶ 6-7; 10-11. After the Court issued its injunction on May 28, 2021, Defendants promptly paid out the original Plaintiffs to ensure compliance with the Court's order that no later-filed applications—priority or otherwise—be processed or considered until the original named plaintiffs had their applications "processed and considered." *See* PI Order at 11; Third Miller Decl. ¶¶ 16-27. The main case relied upon by Plaintiffs for this suggestion, *Campbell-Ewald Co. v. Gomez*, concerned an unaccepted offer of settlement under Federal Rule of Civil Procedure 68. *See* 577 U.S. 153, 161 (2016). The Court held there that because such an unaccepted offer, as a matter of contract law, became void once rejected, the plaintiff retained an interest in the litigation and its claims were not moot. *Id.* That holding has no relevance here because the original named plaintiffs *have* been paid, and thus no longer have an interest in the

---

[2] As discussed *infra*, class certification is inappropriate at this juncture even with the substitution of new class representatives, though the Court should not reach the issue unless and until Plaintiffs file a new motion for class certification identifying the relevant representatives and proposed parameters of the class. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d 834, 852 (W.D. Va. 2018) ("Courts are not expected to fashion even a *pro se* litigant's arguments for it, much less one represented by counsel.").

litigation.  *See* Third Miller Decl. ¶¶ 16-27.  Moreover, their claims were in the process of being paid in the ordinary course and were ultimately paid in response to a Court order, rather than through a voluntary offer of settlement intended to moot the case.  *Id.*[3]  In other words, this is not an instance of Defendants attempting to "pick off" lead plaintiffs to frustrate class certification—the original named plaintiffs were already receiving their requested relief as early as May 27, *see* Third Miller Decl. ¶¶ 7; 10-11, and ultimately received the relief sought through the Court's favorable ruling on their motion for a preliminary injunction, *see* PI Order at 11.  Plaintiffs who obtain their requested relief in response to their own motion for such relief cannot turn around and complain of being "picked off" for purposes of class certification.

## II.  Plaintiffs Cannot Satisfy The Prerequisites For Certifying A Class Even With The New Named Plaintiffs

As explained, Plaintiffs indicated that they intended to file a new or amended motion for class certification but have yet to do so.  *See* 6/3/21 Hrg. Tr. at 5:4-8.  The Court should deny the pending motion not only because the original named Plaintiffs and proposed class representatives no longer possess live claims, but also because since Plaintiffs filed their original motion and proposed their original class the SBA has continued to process nonpriority applications in the ordinary course as the RRF nears exhaustion.  *See, e.g.*, Fifth Miller Decl.; Third Miller Decl.; Second Miller Decl.  Indeed, Plaintiffs now admit that "there really is no daylight between what the government is actually doing and what [Plaintiffs] are asking for, even on a classwide basis." 6/3/21 Hrg. Tr. at 12:13-15.  Plaintiffs therefore should go back to the drawing board to precisely define the scope of any class that could be viable in view of the fact that Plaintiffs and putative class members are already receiving full relief.  *Id.*[4]

---

[3] Similarly, in *Deposit Guaranty Nat. Bank v. Roper*, "[a]t no time did the named Plaintiffs accept the tender in settlement of the case," 445 U.S. 326, 332 (1980), and moreover the named plaintiffs retained an interest in appealing the district court's denial of their motion for class certification due to the plaintiffs' "desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails," *id.* at 336.  But unlike *Roper*, Plaintiffs here do not seek class-wide damages under Rule 23(b)(3), and therefore have no similar interest in spreading the cost of attorneys' fees among the class as a whole.  *See* Compl. ¶ 30; Am. Compl. ¶ 40.

[4] In the event Plaintiffs do ultimately file a new or amended class certification motion, Defendants respectfully request the opportunity to address the arguments raised in that motion in due course.

Even if Plaintiffs had simply substituted the new named Plaintiffs—Lynds, OCF, and their respective owners—as the proposed class representatives in their pending motion, class certification would still be inappropriate.  Plaintiffs' barebones motion for class certification fails to supply the necessary information for this Court to perform the "rigorous analysis" necessary to certify a class. *Sukenberg*, 675 F.3d at 837.  Further, Plaintiffs' recognition that they are already receiving their requested relief, 6/3/21 Hrg. Tr. at 12:13-15, and their further recognition that the case will be moot once the RRF is exhausted, which may happen in a matter of hours or days, altogether undermines any rationale for certifying a class at this juncture, *see id.* at 13:23-14:8 ("When there really is zero possibility of [further relief] because the money is gone, then we do think mootness would be the appropriate disposition."); *see also id.* 37:3-5; *id.* 42:9-10.  The Court should further deny Plaintiffs' motion for class certification for these reasons.

### A. Plaintiffs have not established the existence of a sufficiently numerous or ascertainable class.

Plaintiffs propose certifying a class of "restaurant owners who have been or are being discriminated against because of their race, ethnicity, or sex," suggesting at the outset of the case that such a class would consist of approximately 130,000 class members.  *See* Class Cert. Mem. at 1-2.  But as Plaintiffs admit, no such class presently exists because all putative class members are now receiving the relief initially sought in the complaint.  *See* 6/3/21 H'rng Tr. at 12:13-15.  While Plaintiffs also seek to certify a class of applicants who "have been" allegedly discriminated against, they also admit that no backwards-looking relief is available to such applicants here.  *See* PI Mem., ECF No. 7 at 7 (recognizing "the defendants' sovereign immunity makes it impossible for the plaintiffs to recover damages" and that "no mechanism to 'claw back'" funds exists); *see also* Compl. ¶ 30 (seeking only forward-looking relief and asserting no claim for damages); Am. Compl. ¶ 40 (same).  In other words, Plaintiffs propose a class whose membership by their own admission presently consists of *zero* members or alternatively a class that Plaintiffs admit can receive no relief from this Court.

In the former scenario, Plaintiffs plainly cannot establish the existence of a sufficiently numerous class to warrant certifying a class.  *See Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015)

("[A]n essential prerequisite of an action under Rule 23 is that there must be a 'class.'" (quoting 7A C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 1760 (3d ed. 2005)); *cf. Boucher v. First Am. Title Ins. Co.*, No. C10-199RAJ, 2011 WL 1655598, at *5 (W.D. Wash. May 2, 2011) (explaining that a class that "would have no members" in the event defendants prevail on the merits would not meet ascertainability requirement).  And in the latter case—that of a class composed of applicants who *previously* faced alleged discrimination but who no longer do—the proposed definition would result in a class consisting exclusively of applicants who lack standing to seek any relief.  Such class members lack any *existing* or *real or immediate* injury necessary to supply standing for forward-looking claims, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), and at most would have backwards-looking claims for damages that Plaintiffs admit cannot be redressed due to sovereign immunity, *see 6th St. Bus. Partners LLC v. Abbott*, No. 1:20-CV-706-RP, 2020 WL 4274589, at *4 (W.D. Tex. July 24, 2020) (recognizing sovereign immunity barred retrospective claims for damages); *see also* PI Mem. at 7; Compl. ¶ 30; Am. Compl. ¶ 40.  Courts may not certify classes so evidently lacking Article III standing.  *See In re Deepwater Horizon*, 739 F.3d 790, 801 (5th Cir. 2014) (scrutinizing proposed class definition to determine if proposed class consisted of persons and entities possessing Article III standing); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-264 (2d Cir. 2006) (explaining that "no class may be certified that contains members lacking Article III standing" and that class must be "defined in such a way that anyone within it would have standing."); *accord Wal-Mart*, 564 U.S. at 364-365 (class improperly certified under Rule 23(b)(2) where substantial portion of class had "no claim for injunctive or declaratory relief at all" due to only backwards-looking injuries).

Finally, even setting aside that Plaintiffs are already receiving their requested relief, their proposed class is defined using terms that are fundamentally too vague to permit ascertainability. Plaintiffs seek to certify a class consisting of applicants "who have been or are being discriminated against because of their race, ethnicity, or sex discrimination from the small Business Administration on account of section 5003 of the American Rescue Plan Act," ECF No. 4, which could include numerous applicants who believe they are being discriminated against for reasons unrelated to the priority period provision of the statute.  Plaintiffs' proposed class definition sweeps broadly to include

*any* RRF applicant with *any* race or sex-based discrimination claim against the program, rather than those claiming injury attributable to the priority period.  This fails to supply the "precise definition" needed for class certification.  *John*, 501 F.3d at 445 n.3 ("[A] class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'").

### B.   Plaintiffs have failed to show their claims raise common questions with other class members.

"[W]hat is significant with respect to a commonality determination is 'not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Ward v. Hellerstedt*, 753 Fed. App'x 236, 245 (5th Cir. 2018) (quoting *Wal-Mart*, 564 U.S. at 350)). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (citation omitted).  Plaintiffs' proposed class lacks sufficient commonality to permit common answers to resolve the litigation on behalf of all proposed class members.

First, both the original and new named Plaintiffs in the amended complaint allege that they do not qualify as "economically disadvantaged individuals" under SBA's regulations.  *See* Am. Compl. ¶ 21; *see also* Compl. ¶ 14.  But many members of the proposed class likely *do* qualify as "economically disadvantaged," even if they otherwise are not veterans, women, or "socially disadvantaged individuals."  The SBA's definition of those who are economically disadvantaged is race- and sex-neutral, broadly including individuals who fall within certain income, net worth, and net asset ranges. *See* 13 C.F.R. § 124.104(c).  Plaintiffs do *not* allege that prioritizing RRF grants for businesses owned by economically-disadvantaged individuals is unconstitutional. *See generally* Am. Compl.

The inclusion of economically-disadvantaged and non-economically-disadvantaged members within the same class demonstrates a significant lack of commonality between Plaintiffs' claims and many other class members' potential claims.  For example, if the Court were to issue class-wide relief enjoining operation of the term "socially disadvantaged individual" in the text of the statute, SBA would still be permitted to prioritize processing claims and paying grants to businesses owned by

economically-disadvantaged individuals—including a substantial but unknown number of putative class members.  These members have a strong interest in maintaining prioritization of economically-disadvantaged applicants as it would improve their own ability to access a limited supply of funds.  By contrast, Plaintiffs—who are not economically disadvantaged (Am. Compl. ¶ 21)—have the opposite incentive.  Striking the term "socially disadvantaged" from the statute would afford them no relief if all economically disadvantaged applicants retained priority over Plaintiffs' claims.  In fact, the named Plaintiffs would potentially be *harmed* by such an outcome because enjoining operation of the "socially disadvantaged individual" provision would *expand* the universe of prioritized applicants to include *non*-socially disadvantaged applicants (including presumably thousands of class members) who are otherwise economically disadvantaged.  Plaintiffs are therefore incorrect to assert that each proposed class member suffers the same injury and could not have their applications "prioritized" for access to funds.  *See* Class Cert. Mem., ECF No. 5 at 2.  Plaintiffs have proposed a class where "the interests of those within the single class are not aligned."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997); *see also* 7A C. Wright, A. Miller, & M. Kane, 7A Fed. Prac. & Proc. Civ. § 1763 (3d ed. 2005) (explaining "common questions may not be found when the decision regarding the propriety of injunctive or declaratory relief turns on consideration of the individual circumstances of each class member or when the defendant has not engaged in a common course of conduct toward them").[5]

Second, Plaintiffs have further failed to establish commonality because their proposed class fails to account for how various nonpriority applicants are differently situated now that SBA is processing their applications in the ordinary course.  For example, Plaintiffs fail to address how different putative class members' interests and claims may turn on issues relating to when they applied, the present status of their applications, whether their applications required corrections, and the size of the grant sought in their applications.  As Defendants have explained, different kinds of applications are reviewed, processed, and ultimately paid out at different speeds for reasons unrelated to race or

---

[5] Because the priority period is over and Defendants are no longer prioritizing certain claims over others, this issue is now moot.  *See generally* ECF Nos. 20, 20-1.  Defendants note the issue here to emphasize Plaintiffs' failure to show sufficient commonality for the proposed class.

sex.  *See* Third Miller Decl. ¶¶ 16-18; Second Miller Decl. ¶ 7.  As a result, different putative class members have different remedial interests.  For example, an applicant with a more complex or larger application, but who filed early in the program, may desire class-wide relief requiring that applications be *funded* sequentially based on the timestamp of each application.  By contrast, a later-filing applicant with a less complex claim potentially subject to quicker processing time, might desire relief that SBA *commence reviewing* claims in sequential order based on timestamp, with claims paid as they are approved.  Similarly, many putative class members have likely had their claims paid since Plaintiffs filed their motion for class certification, while others have claims at varying stages of review and processing.  And notably, Lynds—the only named Plaintiff who has yet to have its claim funded by SBA—stands in a unique position relative to most RRF applicants because its application was returned due to a need for corrections.  Fifth Miller Decl. ¶ 4.

These different groups of nonpriority applicants have distinct interests, and correspondingly distinct questions of law and fact, with respect to any injunctive relief the Court may yet issue.  Plaintiffs' single, all-inclusive class fails to account for the competing interests presented by differently-situated applicants, particularly when it comes to the shape of any class-wide injunctive relief, and is therefore over-inclusive of applicants whose claims present different questions of law and fact. *See Trujillo v. UnitedHealth Grp., Inc.*, No. EDCV172547JFWKKX, 2018 WL 4694041, at *7 (C.D. Cal. Sept. 14, 2018) (over-inclusive class lacked sufficient commonality and typicality); *Sustainable Forest, L.L.C. v. Qwest Commc'ns Int'l, Inc.*, No. CV 0:01-2935-CMC, 2005 WL 8146267, at *9 (D.S.C. Nov. 28, 2005) (declining to certify Rule 23(b)(2) class where there were "significant factual differences between the putative class members' claims such that many will necessarily receive no relief at all even if Plaintiffs' theories prove true").

### C.     Plaintiffs have failed to show their claims are typical of the class as a whole.

Typicality and commonality "tend to merge," and both ultimately address "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claim are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 157-158, n.13 (1982)); *see also Flecha*, 946 F.3d at 768.  Plaintiffs' claims are therefore not typical for substantially the same reasons as in Section II.B—each of the named Plaintiffs alleges that they are not economically disadvantaged and therefore raises claims that are not typical of a substantial portion of the class.  Plaintiffs have also made no showing that their claims are typical of the differently-situated applicants within the putative class.

Further still, because OCF's claim has since been funded and likely disbursed in the ordinary course, Fifth Miller Decl. ¶ 5, its claim is no longer typical of the ordinary class member still seeking RRF dollars.  Similarly, because Lynds's application was returned for corrections, its claim is not typical of the majority of remaining putative class members whose application timestamp remains tied to their original application dates.  *Id.* ¶ 4.

Plaintiffs are therefore again incorrect in alleging their claims "are precisely the same as the claims belong [to] all members of the proposed class," ECF No. 5 at 3, and have failed to demonstrate sufficient typicality to warrant certifying a class.

### D.   The new named Plaintiffs' claims are in conflict with the interests of the proposed class.

Plaintiffs acknowledged that the original named Plaintiffs are no longer suitable class representatives.  *See supra* Section I.  But the two new named Plaintiffs—Lynds, OCF, and their respective owners—are similarly ineligible to serve as class representatives because both also received relief prior to entering the case as named plaintiffs.  OCF already had its application "fully approved" by SBA.  Fifth Miller Decl. ¶ 5.  And similarly, SBA had already commenced reviewing Lynds's application.  *Id.* ¶ 4.  Because these named Plaintiffs were already receiving requested relief at the time they were added to the complaint, *see* 6/3/21 Hrg. Tr. at 12:13-15, they are not appropriate class representatives.

Subsequent events only reinforce this conclusion.  OCF had its application booked into E-Tran for disbursement on June 7, 2021 and therefore most likely has already received its RRF grant in the ordinary course.  Fifth Miller Decl. ¶ 5.  It is therefore no longer a suitable class representative for the same reasons as the original named Plaintiffs.  *See supra* Section I.  Lynds has since had its

application returned for corrections, and subsequently resubmitted with corrected information. *Id.* ¶ 4. That application continues to be reviewed in the ordinary course. *Id.*. While it has not yet been paid, Lynds is nonetheless still receiving all of its requested relief—having its application reviewed and processed without reference to the sex and race of its owners. *Id.*; *see also* Third Miller Decl. ¶¶ 7-8. Moreover, because of the need to resubmit its application, Lynds's application is no longer typical of the class as a whole. *See* Fifth Miller Decl. ¶ 4. Indeed, the errors in its original application and its need to file a corrected application raise significant and unique factual questions about whether any alleged harm to the applicant is traceable to the priority period at all. The Court should not certify a class led by a single class representative whose claim is so impacted by unique factual circumstances. *See, e.g.*, *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 134 (N.D. Tex. 2020) (declining to certify a class where class representative had "unique issues" that "threaten[ed] the absent class members"); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) ("[C]lass certification is not appropriate where a class representative is subject to unique defenses that threaten to become the focus of the litigation.").

> ### E. Plaintiffs have failed to show that Defendants have acted or refused to act on grounds that apply generally to the class.

In addition to the four factors required under Rule 23(a), Plaintiffs seeking to certify a Rule 23(b)(2) class must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Fifth Circuit has explained, "this rule seeks to redress what are really group as opposed to individual injuries," thus "render[ing] the notice and opt-out provisions of (b)(3) unnecessary." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (quoting *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 n.22 (5th Cir. 2000)). Certification under this provision is permissible "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart.*, 564 U.S. at 360. And the relief sought "must be specific." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007).

Plaintiffs' original proposed class is no longer tenable under this standard because many original proposed class members have since had their applications paid in full by SBA due to its processing of nonpriority applications. And further, SBA is now processing all nonpriority applications in the ordinary course, meaning that no outstanding group injury remains to be redressed. Third Miller Decl. ¶ 7. "Rule 23(b)(2) certification is . . . inappropriate when the majority of the class does not face future harm." *Maldonado*, 394 F.3d at 525 (citing *Bolin*, 231 F.3d at 978). And Plaintiffs cannot point to a "specific" injunctive or declaratory judgment that could provide relief to each member of their proposed class. *Id.* at 524; *cf. In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) ("It makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress."). Indeed, while Plaintiffs have represented that they intend at some point to seek further injunctive relief on behalf of the new named Plaintiffs, *see* 6/3/21 Hrg. Tr. at 5:9-14, it is not even clear that they presently seek *any* class-wide injunctive relief in view of their admission that they are already receiving such relief, *id.* at 12:12-15. Certification of a Rule 23(b)(2) class is therefore inappropriate at this time.

## CONCLUSION

For the reasons above, Plaintiffs' motion for class certification (ECF No. 4), should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Christopher D. Dodge*
Christopher D. Dodge (MA No. 696172)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel: (202) 598-5571
Email: christopher.d.dodge@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On June 14, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Christopher D. Dodge*
Christopher D. Dodge
Trial Attorney
United States Department of Justice