IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

BLESSED CAJUNS LLC, *et al.*,

      Plaintiffs,

v.

ISABELLA CASILLAS GUZMAN, *et al.*,

      Defendants.

Civil Action No. 4:21-cv-00677-O

---

## OFFICIAL CAPACITY DEFENDANTS' PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION[1]

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Christopher D. Dodge*
Christopher D. Dodge (MA No. 696172)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel: (202) 598-5571
Email: christopher.d.dodge@usdoj.gov

*Attorneys for the Small Business Administration and Administrator Guzman in her Official Capacity*

---

[1] This motion is filed exclusively on behalf of the SBA and the Administrator in an official capacity.

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................2

LEGAL STANDARD ................................................................................................................5

DISCUSSION ............................................................................................................................6

I.      The Funded Plaintiffs Have Failed To Plead Facts Warranting Entry Of A
        Permanent Injunction ......................................................................................................7

II.     The Second Amended Complaint's Request For A Declaratory Judgment Does Not
        Sustain A Live Controversy For The Funded Plaintiffs ...............................................11

III.    Lynds Inn And Its Owner Should Be Dismissed From The Case For Lack Of
        Subject-Matter Jurisdiction ..........................................................................................14

CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

## **Cases**

*AHS Staffing, LLC v. Quest Staffing Grp., Inc.,*
  335 F. Supp. 3d 856 (E.D. Tex. 2018)...................................................................9

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ..................................................................................... 5, 6

*Am. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO,*
  Case No. 4:19-CV-414-A, 2019 WL 3774501 (N.D. Tex. Aug. 12, 2019).................... 8, 9

*Bauer v. Texas,*
  341 F.3d 352 (5th Cir. 2003)...........................................................................11, 12, 13

*Breaux v. Haynes,*
  Case No. CV 15-769-JJB-RLB, 2017 WL 5158699 (M.D. La. Aug. 3, 2017)...................12

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ........................................................................................ 11, 13

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods,*
  915 F.2d 167 (5th Cir. 1990)...............................................................................13

*Ctr. For Biological Diversity v. Lohn,*
  511 F.3d 960 (9th Cir. 2007)...............................................................................12

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,*
  704 F.3d 413 (5th Cir. 2013)................................................................................6

*DM Arbor Court, Ltd. v. City of Houston,*
  Case No. H-18-1884, 2021 WL 4926015 (S.D. Tex. Oct. 21, 2021) .............................12

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ..................................................................................... 9, 10

*Eccles v. Peoples Bank,*
  333 U.S. 426 (1948) .........................................................................................8

*Endsley v. Green Tree Servicing LLC,*
  Case No. 5:15CV151-RWS-, 2017 WL 1856281 (E.D. Tex. Feb. 8, 2017) .......................13

*Env't Conservation Org. v. City of Dallas,*
  529 F.3d 519 (5th Cir. 2008)................................................................................5

*Feit v. Ward,*
 886 F.2d 848 (7th Cir. 1989) ................................................................................................11

*Fontenot v. McCraw,*
 777 F.3d 741 (5th Cir. 2015) ..................................................................................................6

*Gladden v. Roach,*
 864 F.2d 1196 (5th Cir. 1989) ................................................................................................9

*Henschen v. City of Houston,*
 959 F.2d 584 (5th Cir. 1992) ..................................................................................................8

*Holland Am. Ins. Co. v. Succession of Roy,*
 777 F.2d 992 (5th Cir. 1985) ..................................................................................................9

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
 143 F.3d 1006 (5th Cir. 1998) ................................................................................................5

*IBEW-NECA Sw. Health & Ben. Fund v. Morley-Moss, Inc.,*
 Case No. 3:12-CV-1335-M, 2012 WL 6021305 (N.D. Tex. Dec. 4, 2012) ........................10

*Intercontinental Group P'ship v. KB Home Lone Star L.P.,*
 295 S.W.3d 650 (Tex. 2009) ................................................................................................12

*ITT Educ. Servs., Inc. v. Arce,*
 533 F.3d 342 (5th Cir. 2008) ..................................................................................................9

*Janvey v. Alguire,*
 647 F.3d 585 (5th Cir. 2011) ................................................................................................10

*Kentucky v. Graham,*
 473 U.S. 159 (1985) ..............................................................................................................11

*Khan v. Fort Bend Indep. Sch. Dist.,*
 561 F. Supp. 2d 760 (S.D. Tex. 2008) ................................................................................10

*King v. Select Portfolio Servicing, Inc.,*
 Case No. 418CV00825ALMCAN, 2019 WL 1141933 (E.D. Tex. Feb. 26, 2019) ............14

*Kinnison v. City of San Antonio,*
 699 F. Supp. 2d 881 (W.D. Tex. 2010) ................................................................................11

*Lewis v. Casey,*
 518 U.S. 343 (1996) ................................................................................................................6

*Machete Prods., LLC. v. Page,*
 809 F.3d 281 (5th Cir. 2015) ....................................................................................8, 11, 13

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ........................................................................................ 9, 10

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ............................................................................................... 5

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................................................. 10

*Peoples Rights Org. v. City of Columbus,*
    152 F.3d 522 (6th Cir. 1998) .............................................................................. 12

*Powell v. McCormack,*
    395 U.S. 486 (1969) ............................................................................................. 11

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991); *aff'd,* 463 F. App'x 322 (5th Cir. 2012) .......................... 11

*Standard Brands, Inc. v. Zumpe,*
    264 F. Supp. 254 (E.D. La. 1967) ................................................................... 10, 11

*Stanley Indus. of S. Fla., Inc. v. JC Penney Co.,*
    Case No. CIV A 305-CV-2499-L, 2007 WL 1461391 (N.D. Tex. May 16, 2007) ........................... 13

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .......................................................................................... 9, 12

*Stringer v. Whitley,*
    942 F.3d 715 (5th Cir. 2019) .................................................................................. 9

*Sullivan v. IRS,*
    Case No. CIV.A. H-09-3432, 2011 WL 486276 (S.D. Tex. Feb. 7, 2011) ........................... 11

*Wavetronix LLC v. Iteris, Inc.,*
    Case No. A-14-CA-970-SS, 2015 WL 300726 (W.D. Tex. Jan. 22, 2015) ........................... 10

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ............................................................................................ 8, 9

## **Rules**

Fed. R. Civ. P. 4 .................................................................................................. 5

Fed. R. Civ. P. 12 ................................................................................................ 5

Fed. R. Civ. P. 15 ................................................................................................ 5

**<u>Other Authorities</u>**

SBA, *SBA Administrator Announces Closures of Restaurant Revitalization Fund Program*
(July 2, 2021),
   https://perma.cc/8SGA-5ERT ................................................................................................ 4, 15

SBA, *Last Call: Administrator Guzman Announces Final Push for Restaurant Revitalization Fund Applications* (May 18, 2021),
   https://perma.cc/DJ37-YE8N ...................................................................................................15

## INTRODUCTION

Plaintiffs' Second Amended Complaint asserts a single claim for relief—a *Bivens* action against SBA Administrator Guzman in her individual capacity on behalf of two white male restauranteurs who did not receive Restaurant Revitalization Fund ("RRF") awards.  *See* Second Am. Compl. ¶¶ 40-45, ECF No. 40; *id.* at 1-3.  But that claim, including whether it is plausibly stated, is not ripe for the Court's review because Plaintiffs have yet to serve Administrator Guzman in her individual capacity and her time to respond has not yet started to run.

The Second Amended Complaint asserts no other cause of action on behalf of the remaining Plaintiffs.  Nor could it.  Since this case started, the statutory priority period Plaintiffs challenge has expired; SBA began processing Plaintiffs' applications in a manner that "satisfied" them (ECF No. 35-3 at 11:12-13 ("Hr'g Tr.")); the Court preliminarily enjoined the allegedly unconstitutional behavior Plaintiffs contested; the remaining Plaintiffs' RRF applications were processed in the ordinary course and, if approved, were funded;[2] and the RRF has since ceased to operate.  Even if the RRF were to resume operation, the Funded Plaintiffs face no future risk of injury—they no longer have live claims with the RRF; the 21-day priority period they challenged has long since expired; and the Funded Plaintiffs already received "essentially the remedy [they] want[ed] on a classwide basis."  Hr'g Tr. at 11:6-8.  The Second Amended Complaint therefore abandons the injunctive relief Plaintiffs originally sought—a "permanent injunction that prevent[s] Administrator Guzman and her successors from implementing any race or sex preferences in SBA programs."  Compl. ¶ 30(c); *id.* ¶ 21; First Am. Compl. ¶¶ 31, 40(c).  Such relief is, as Plaintiffs seem to agree, no longer necessary—the Funded Plaintiffs have received their awards; no longer have live applications; and the RRF is no longer operating.  Because the Funded Plaintiffs no longer have live claims, they should be dismissed from the case for lack of subject-matter jurisdiction.

---

[2] Blessed Cajuns, PSBH, and OCF Cafe ultimately received awards.  Collectively, with their owners, they are referred to herein as the "Funded Plaintiffs."  The only remaining Plaintiff-restaurant—Lynds Inn LLC—prejudiced its own ability to obtain an RRF award by submitting an application containing errors and independently lacks standing for that reason.  *See infra* Argument, Section III.

**Official Capacity Defendants' Partial Motion to Dismiss – Page 1**

While the Second Amended Complaint still seeks injunctive and declaratory relief on their behalf, the Funded Plaintiffs do not allege a present or forward-looking injury sufficient to warrant such relief.  The Funded Plaintiffs ask for a permanent injunction barring SBA from clawing back their awards, but that request is not well-pled.  The Second Amended Complaint alleges no facts suggesting SBA is likely, or even able, to claw back their awards, and the agency has already expressly affirmed that it has no intention of doing so.  Plaintiffs, too, have repeatedly alleged that no mechanism even exists to claw back RRF funds and their Second Amended Complaint points to none.  Such a speculative and non-imminent claim of harm does not warrant entry of an injunction.  For the same reasons, the Funded Plaintiffs are not entitled to declaratory relief.  Declaratory relief is only appropriate where plaintiffs face ongoing or future harm, but the Funded Plaintiffs fail to plausibly allege such harm here.  Because injunctive and declaratory remedies can no longer supply meaningful relief to the Funded Plaintiffs, and also because the Second Amended Complaint pleads no cause of action on their behalf, these Plaintiffs should be dismissed from the case at this time.

## BACKGROUND

Plaintiffs initially filed this action on May 23, 2021, seeking injunctive and declaratory relief on behalf of two restaurant entities—Blessed Cajuns LLC and PSBH LLC—and a putative class of similarly-situated restaurants.  *See generally* Compl., ECF No. 1.[3]  Plaintiffs shortly thereafter filed a motion for a preliminary injunction asking the Court to enjoin continued operation of the RRF's priority period provision.  *See generally* ECF Nos. 6, 7.  Plaintiffs contended that extraordinary preliminary relief was necessary because "absent a preliminary injunction . . . the entire $28.6 billion that Congress appropriated is likely to be depleted before their applications will be eligible for consideration."  PI Mem., ECF No. 7 at 7.  Plaintiffs further argued that this relief was necessary because "there is no mechanism to 'claw back' this money once it is dispensed, and the defendants' sovereign immunity makes it impossible for the plaintiffs to recover damages if these unconstitutional

---

[3] Plaintiffs' counsel previously filed a nearly identical complaint on behalf of Greer's Ranch Café.  *See generally Greer, et al. v. Guzman, et al.*, Case No. 4:21-cv-651, ECF No. 1 (N.D. Tex.) ("*Greer*").

race and sex preferences wind up excluding them from the Restaurant Revitalization Fund." *Id.*

Defendants responded to the motion for a preliminary injunction on May 25, 2021, arguing that the case had become moot because, at that time, the statutory priority period in the RRF had expired and SBA had begun processing non-priority applications in the ordinary course. *See generally* Defs.' Resp., ECF No. 11. Defendants noted that "[t]he complaint does not seek any backwards-looking relief and Plaintiffs admit that there is 'no mechanism to "claw back" this money once it is dispensed, and the defendants' sovereign immunity makes it impossible for the plaintiffs to recover damages.'" *Id.* at 11 (quoting PI Mem.). Plaintiffs replied in turn by arguing that the case was not yet moot because priority applicants were potentially further ahead in the review process than nonpriority applicants. *See* Pls.' Reply, ECF No. 13. Plaintiffs reiterated the alleged need for immediate preliminary relief, again stating "there is no mechanism to 'claw back' any funds from the Restaurant Revitalization Fund once the SBA dispenses them." *Id.* at 7. The Court granted Plaintiffs' motion for a preliminary injunction on May 28, 2021. *See* ECF No. 18.

On May 25, 2021, prior to the Court's order, and consistent with ARPA's statutory instruction that SBA prioritize "awarding grants to eligible entities" only during the "initial 21-day period" of the program, ARPA § 5003(c)(3)(A), SBA began processing nonpriority applications and paused processing priority applications shortly thereafter. *See* June 1, 2021 Miller Decl. ¶¶ 6-8; *see also* May 25, 2021 Miller Decl. ¶¶ 22-24; *see also* June 11, 2021 Miller Decl. In view of these developments, SBA began processing both original Plaintiffs' applications *prior* to the Court's injunction. *See* June 1, 2021 Miller Decl. ¶¶ 10-11. Blessed Cajuns' award was approved in the ordinary course on May 29. *Id.* ¶ 10. PSBH's application, due to its size, required more extensive review. *Id.* ¶¶ 11-12. SBA ultimately disbursed awards for both Plaintiffs on June 1 in order to ensure compliance with the Court's injunction and to permit continued processing of other nonpriority applications. *Id.* ¶¶ 15-25.

On June 3, 2021, Plaintiffs filed an amended complaint adding two new Plaintiff restaurants—Vermont-based Lynds Inn LLC and Pennsylvania-based OCF Café LLC. *See* Am. Compl., ECF No. 21 ¶¶ 8-12. The amended complaint, like the original complaint, exclusively sought injunctive and declaratory relief for the named Plaintiffs and a putative class. *Id.* ¶ 40. At the time the amended

complaint was filed, both of these new Plaintiffs' applications were already in the process of being reviewed. *See* Hr'g Tr. at 21:12-22:11. OCF Cafe LLC ultimately had its application approved and its award issued, while Lynds Inn LLC's application was returned to the applicant due to errors in the application. *See* June 14, 2021 Miller Decl. ¶¶ 4-5; *see also* August 3, 2021 Miller Decl. ¶ 9 (explaining Lynds Inn refiled a corrected application on June 3, 2021).

Also on June 3, the Court held a hearing concerning what remaining relief might be available, or appropriate, in the case. *See* ECF No. 23; *see also* Hr'g Tr. Addressing the SBA's processing of nonpriority applications at the time of the hearing, Plaintiffs' counsel acknowledged that it "does appear to provide what we are asking for, which is essentially the remedy we want on a classwide basis" and further stated that "from the plaintiffs' standpoint, we appear satisfied with what" SBA was doing as of June 3. Hr'g Tr. at 11:6-8, 11:12-13. Counsel further stated "there really is no daylight between what the government is actually doing and what we are asking for, even on a classwide basis." *Id.* at 12:13-15. Several weeks later, on June 30, 2021, the RRF became exhausted and closed. *See* SBA, *SBA Administrator Announces Closures of Restaurant Revitalization Fund Program* (July 2, 2021), https://perma.cc/8SGA-5ERT.

Nearly one month after that, on July 30, 2021, Plaintiffs filed a motion for leave to file the proposed Second Amended Complaint. *See* Mot. for Leave, ECF No. 33; *id.* No. 33-1 (proposed Second Amended Complaint). Defendants opposed the motion, contending the case became moot when the RRF closed, that Plaintiffs should not be permitted to plead a fundamentally new case on behalf of new plaintiffs, and that Plaintiffs' new claims were futile. *See* ECF No. 35. As relevant here, Defendants argued that Plaintiffs failed to adequately plead the need for a permanent injunction, particularly in view of their own repeated admission that § 5003 provides no means for clawing back RRF awards. *Id.* at 20-23. The Court granted Plaintiffs' motion for leave to file the Second Amended Complaint on August 10, 2021, *see* Order, ECF No. 39, although it withheld ruling on Defendants' futility arguments, concluding that those were better addressed in the context of Rule 12(b) or summary judgment briefing. *Id.* at 6 n.3.

The Second Amended Complaint added two new Plaintiff-restaurants to the case—GBB Hospitality Group LLC (as well as its owner and a related payroll company) and 7th Avenue Property Management, Inc. (and its owner).  *See* Second Am. Compl. ¶¶ 13-17.  The new pleading also adds, for the first time, a claim for damages on behalf of these new Plaintiffs under *Bivens* and further requests a permanent injunction barring SBA from clawing back the awards previously granted to the Funded Plaintiffs—Blessed Cajuns, PSBH, and OCF Cafe.  *See id.* ¶¶ 44-46; *see also* First Am. Compl. ¶ 40(c).  Plaintiffs served the SBA and Administrator Guzman (in her official capacity) for the first time on September 3, 2021.  *See* ECF No. 41.[4]  Plaintiffs have not yet served Administrator Guzman in her personal capacity, and thus her time to respond to the *Bivens* claim has not yet started to run. *See* Fed. R. Civ. P. 4(i)(3); Fed. R. Civ. P. 12(a)(3).[5]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint where the court "lacks the statutory or constitutional power to adjudicate the case[,]"  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted), including where claims have become moot, *see, e.g.*, *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524-525 (5th Cir. 2008). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (*per curiam*)).  "No matter how vehemently the parties continue to dispute the lawfulness

---

[4] Under the Federal Rules of Civil Procedure, the SBA and Administrator Guzman (in her official capacity) were required to respond to the Second Amended Complaint "within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). Plaintiffs had not served either of the prior complaints on Defendants. Accordingly, their time to respond is 60 days from the date of service of the Second Amended Complaint (November 2, 2021). *See* Fed. R. Civ. P. 12(a)(2).

[5] In compliance with the Court's October 15, 2021 order (ECF No. 42), the parties met and conferred on October 28, 2021 to discuss an appropriate schedule for this case. The parties intend to propose an appropriate briefing schedule in their joint filing on November 12, 2021. The official capacity Defendants nonetheless file the instant motion to dismiss in order to comply with their deadline to respond to the Second Amended Complaint based on Plaintiffs' September 3, 2021 service of process.

of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* "Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir 2013).

## DISCUSSION

The Funded Parties no longer have live claims. Their "only legally cognizable injury"—SBA's initial 21-day prioritization of certain RRF applications—"is now gone and . . . cannot reasonably be expected to recur." *Nike, Inc.*, 568 U.S. at 100. Because the Funded Plaintiffs have no remaining past harm to redress, and no plausible imminent future harm to enjoin, there is "no other basis on which to find a live controversy [and] the case is clearly moot" as to them. *Id.*; *see also Ctr. for Biological Diversity*, 704 F.3d at 426 (explaining that where there "is no realistic prospect that further [injury] will occur, there can be no meaningful relief granted by an injunctive order"). The Court should therefore dismiss these parties from the case. *See, e.g., Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) (explaining that "each plaintiff[]" must have "Article III standing for each claim" because "'standing is not dispensed in gross'" (quoting *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996)).

The Funded Plaintiffs nonetheless now seek "a permanent injunction prohibiting the defendants from recovering Restaurant Revitalization Funds disbursed to the plaintiffs contrary to the purported statutory requirements of section 5003(c)(3)(A)." Second Am. Compl. ¶ 45. And the Second Amended Complaint also generally seeks a declaration declaring the priority period provision of § 5003 unconstitutional. *Id.* ¶ 46(a). But because neither form of relief offers meaningful redress to the Funded Plaintiffs at this stage, and because Plaintiffs have not shown any entitlement to the requested permanent injunction specifically, the Court should dismiss their claims as moot under Rule 12(b)(1).[6] *See Ctr. for Biological Diversity, Inc.*, 704 F.3d at 425. Finally, the Court should also dismiss Lynds Inn and its owner from the case because the Second Amended Complaint asserts no cause of

---

[6] While the Court's August 10 order recognized that these two forms of relief remain available, it refrained from resolving any Rule 12(b) challenge to the Second Amended Complaint at that time. *See* ECF No. 39 at 5-6, n.3.

action on their behalf; seeks no remedy on their behalf; and fails to plausibly allege that Lynds Inn's alleged injury is traceable to the priority period.

## I.      The Funded Plaintiffs Have Failed To Plead Facts Warranting Entry Of A Permanent Injunction

The Funded Plaintiffs seek a permanent injunction to protect the complete relief they have already obtained.  *See* Second Am. Compl. ¶ 33.  These Plaintiffs do not seek this injunction because they are concerned that they may once again be subject to SBA's allegedly unconstitutional processing of RRF applications; that is impossible—they no longer have live RRF applications and the RRF is closed and no longer processing such applications.  Further still, § 5003 instructed SBA to engage in these challenged practices only "[d]uring the initial 21-day period in which the Administrator awards grants under this subsection[.]"  ARPA § 5003(c)(3)(A).  That period ended on May 24, 2021—over two months before Plaintiffs sought leave to file the operative complaint and to obtain this injunction.  *See* June 1, 2021 Miller Decl. ¶ 5.

The Funded Plaintiffs nonetheless still say they require a permanent injunction for fear that SBA may claw back their awards as improperly granted under § 5003(c)(3)(A).  But the Second Amended Complaint fails to plausibly allege how that may be the case.  Instead, Plaintiffs have serially claimed that "there is no mechanism to 'claw back' this money once it is dispensed."  PI Mem., ECF No. 7 at 7; *see also* Pls.' Reply, ECF No. 13 at 7 (same); *Greer*, ECF No. 6 at 7 (same).  And even assuming such a mechanism does exist, nothing in § 5003(c)(3)(A) directs SBA to indefinitely prioritize certain applications, never mind to affirmatively *claw back* funds from other applicants.  *See Kingsley Restaurants, Inc. v. SBA*, Case No. 1:21-cv-2314-SCJ (N.D. Ga.), ECF No. 16 at 6-8 (explaining that the "priority period ran before plaintiffs filed suit" and that, as a result, even if the RRF resumed operation "it would not revive this suit at this time").  To the contrary, the very purpose of the priority period was to create a *limited* period of prioritizing certain applicants before going on to approve awards for restaurants like the Funded Plaintiffs.[7]

---

[7] SBA, for its part, has never stated that it reads § 5003(c)(3)(A) to compel it to indefinitely continue granting a preference to particular applicants.  Plaintiffs suggest, without any citation or explanation, that Defense counsel somehow conceded at the June 3 hearing that the agency's processing of non-

Further still, even if the Funded Plaintiffs did offer a coherent reading of § 5003(c)(3)(A) that imperiled their awards—and the Second Amended Complaint nowhere does so—that does not change the fact that *nothing* in the law authorizes or empowers SBA to claw back non-fraudulent awards from otherwise eligible restaurants, as Plaintiffs once acknowledged.   The Second Amended Complaint itself alleges that 6,758 non-priority restaurants were issued awards; Plaintiffs' suggestion that SBA is likely, or even legally or practically able, to engage in the burdensome legal process of clawing back these awards is not facially plausible.   And the allegation is all the more implausible in view of the agency's own sworn statement that it has no intention of clawing back Plaintiffs' awards, *see* August 3 Miller Decl. ¶ 10, in addition to the fact that doing so would potentially conflict with two previously-issued preliminary injunctions.   SBA's good faith assertion alone should be enough to moot the Funded Plaintiffs' request for an injunction, particularly in light of the agency's past compliance with the Court's preliminary injunction.   *See Machete Prods., LLC. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (explaining that "especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative" (citing *Henschen v. City of Houston,* 959 F.2d 584, 588 (5th Cir. 1992)); *accord Eccles v. Peoples Bank,* 333 U.S. 426, 431 (1948).

For these reasons, the Funded Plaintiffs do not come close to alleging a need for a permanent injunction.   Such injunctions are not granted "as a matter of course."   *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008).   Rather, "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."   *Am. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, No. 4:19-CV-414-A, 2019 WL 3774501, at *9 (N.D. Tex. Aug. 12, 2019).   "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between

---

priority applications was contrary to statute.   *See* Second Am. Compl. ¶ 32.   That is plainly not correct.   *See* Hr'g Tr. at 16:2-6 (disagreeing with Plaintiffs that the statute compelled SBA to continue to prioritize certain applications); *id.* at 16:21-23 ("But certainly we do not agree that these SBA officials are under express statutory command of Congress to continue prioritizing [certain applications]"); *id.* at 43:6-8 ("the idea that the statute is . . . continuing to compel the agency to engage in the challenged conduct is just not support by the text" of the statute); *id.* at 43:10-11 ("the manner in which the agency is now behaving is entirely consistent with the text" of the statute).

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not

be disserved by a permanent injunction." *Id.* (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

391 (2006)).

The Second Amended Complaint fails to plausibly allege facts meeting any of *eBay* factors,

never mind all four.  As to the first, the Funded Plaintiffs fail to allege any ongoing or imminent

irreparable harm.[8]  Their alleged fear of having their awards clawed back by SBA is not supported by

any plausible factual allegations or a coherent reading of § 5003(c)(3)(A).  Such "[s]peculative injury is

not sufficient; there must be more than an unfounded fear on the part of the applicant."  *Holland Am.*

*Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (overturning injunction); *see also Gladden v.*

*Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989) ("[I]t is not sufficient for the plaintiff to speculate that he

will be subject to injurious conduct if . . . [a challenged] law remains on the books.").  Instead, Funded

Plaintiffs "must allege 'specific facts' to support a finding of irreparable injury."  *ITT Educ. Servs., Inc.*

*v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (citation omitted).  They fail to do so here.

Further still, the Funded Plaintiffs' speculative claim of future injury is not imminent, and thus

"a permanent injunction is not now needed to guard against any present or imminent risk of likely

irreparable harm."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010); *see also AHS Staffing,*

*LLC v. Quest Staffing Grp., Inc.*, 335 F. Supp. 3d 856, 873 (E.D. Tex. 2018) ("An injunction is

appropriate only if the anticipated injury is imminent and not speculative." (citing *Winter*, 555 U.S. at

22)).  SBA cannot snap its fingers and recoup Funded Plaintiffs' awards; any such demand would

require burdensome and lengthy legal process during which time the Funded Plaintiffs could return

to this Court for relief.  *See Monsanto Co.*, 561 U.S. at 162 (explaining "respondents may file a new suit

challenging such action and seeking appropriate preliminary relief" at that time).

---

[8] Any alleged past harm cannot form the basis of the Funded Plaintiffs' request for an injunction
because "injunctive and declaratory relief 'cannot conceivably remedy any past wrong.'"  *Stringer v.*
*Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108
(1998)).  Further, even to the extent they suffered a past injury when SBA did not initially process
their applications, that injury has been fully remedied—indeed, these Plaintiffs obtained "essentially
the remedy [they] want[ed] on a classwide basis," Hr'g Tr. at 11:6-8, and had their RRF applications
processed and awarded.

Turning to the second factor, the Funded Plaintiffs have already received full monetary satisfaction in this case and have not plausibly alleged those monetary awards are in jeopardy. Even in the improbable event SBA ever sought to recoup their awards, the Funded Plaintiffs have legal recourse short of a permanent injunction in this case. They could, of course, simply defend against any recoupment effort at that time with the same constitutional arguments they successfully raised here. And they could also seek appropriate injunctive relief from this Court at that time. *See Monsanto Co.*, 561 U.S. at 162. In other words, declining to grant the Funded Plaintiffs' requested injunction now will not prejudice their ability to protect their monetary awards at a later date that, in all likelihood, will never come. *Cf. Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (finding no adequate remedy where failing to grant injunction risked dissipation of funds). Plaintiffs therefore do "not allege that there is no adequate remedy at law or that irreparable harm would ensue absent an injunction." *IBEW-NECA Sw. Health & Ben. Fund v. Morley-Moss, Inc.*, No. 3:12-CV-1335-M, 2012 WL 6021305, at *2 (N.D. Tex. Dec. 4, 2012) (declining to grant injunction (citing e*Bay*, 547 U.S. at 391)).

The balance of hardships and the public interest similarly disfavor injunctive relief. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (concluding these factors merge in the preliminary injunction context when relief is sought against the government). Funded Plaintiffs face no present or imminent future risk of hardship—their purported fear of having their awards clawed back is entirely specious. Funded Plaintiffs have enjoyed their awards for months and SBA has taken no steps to claw back their awards during that time, either before or after the Second Amended Complaint was filed. Because Funded Plaintiffs have failed to allege any likelihood of irreparable harm, they cannot plausibly show that the balance of hardships or the public interest tilts in their favor. *E.g.*, *Wavetronix LLC v. Iteris, Inc.*, No. A-14-CA-970-SS, 2015 WL 300726, at *9 (W.D. Tex. Jan. 22, 2015); *Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760, 766 (S.D. Tex. 2008).

In sum, Plaintiffs allege nothing but a baseless claim that SBA will seek to strip them of their lawfully issued RRF awards. But "[i]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Standard Brands, Inc. v. Zumpe*, 264 F. Supp. 254, 267–68 (E.D. La. 1967). "Nor will an injunction be issued to restrain one from doing what he is

not attempting and does not intend to do." *Id.* SBA has already represented that it does not intend

to recoup Funded Plaintiffs' awards, *see* August 3 Miller Decl. ¶ 10, which should settle the issue, *see*

*Sullivan v. IRS*, No. CIV.A. H-09-3432, 2011 WL 486276, at *3 (S.D. Tex. Feb. 7, 2011) (presumption

of good faith accorded to agency affidavits cannot be overcome by mere speculation (citing *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)), *aff'd* 463 F. App'x 322 (5th Cir. 2012); *Machete*

*Prods.*, 809 F.3d at 288. In sum, the Funded Plaintiffs have not plausibly alleged a present or future

risk of harm warranting entry of a permanent injunction, and their request for such relief therefore

does not sustain subject-matter jurisdiction over their continued participation in this litigation.

## II.   The Second Amended Complaint's Request For A Declaratory Judgment Does Not Sustain A Live Controversy For The Funded Plaintiffs

The Second Amended Complaint also seeks declaratory relief, apparently on behalf of each

Plaintiff, stating that the priority provision in § 5003 is unconstitutional. *See* Second Am. Compl. ¶¶

45, 46(a). But that request cannot sustain the Court's jurisdiction over the Funded Plaintiffs because

there no longer "is a live dispute between th[ose] parties" and any of the Defendants. *Powell v.*

*McCormack*, 395 U.S. 486, 518 (1969) (explaining the "availability of declaratory relief" depends upon

such a live dispute).[9]

To obtain declaratory relief, a plaintiff must "allege facts from which it appears there is a

substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th

Cir. 2003) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)); *cf. Kinnison v. City of San Antonio*, 699

---

[9] The official capacity Defendants do not presently seek to dismiss 7th Avenue Property Management, Inc. or GBB Hospitality Group LLC from the case because their *Bivens* claims, for now, remain pending. But, should the Court dismiss their *Bivens* claim, the declaratory relief requested by the Second Amended Complaint likewise does not sustain their presence in the case. These Plaintiffs may only seek declaratory relief against the official capacity Defendants. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-168 (1985) (distinguishing between individual and official capacity claims); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("a declaration that the policy is unconstitutional . . . can be obtained only from the defendants in their official capacities, not as private individuals"). But these Plaintiffs do not allege *any* claims against the official-capacity Defendants, never mind an ongoing or imminent injury that would entitle them to declaratory relief. Accordingly, if at any point the Court dismisses their *Bivens* claims, it should fully dismiss these Plaintiffs from the case—no other claim or allegation in the Second Amended Complaint supplies them subject-matter jurisdiction.

F. Supp. 2d 881, 887-888 (W.D. Tex. 2010) ("A declaratory judgment, by its nature, is forward looking; it is designed to resolve a controversy and prevent future damages. It affects a party's behavior or alters the parties' legal relationship on a going-forward basis." (quoting *Intercontinental Group P'ship v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 660 (Tex. 2009))). Any alleged risk of future harm also "must be extant at all stages of review, not merely at the time the complaint is filed." *Bauer*, 341 F.3d at 3458; *see also Breaux v. Haynes*, No. CV 15-769-JJB-RLB, 2017 WL 5158699, at \*5 (M.D. La. Aug. 3, 2017) (explaining that "no case or controversy exists justifying declaratory relief where the purported 'adverse effect' is 'so remote and speculative that there [is] no tangible prejudice to the *existing interests* of the parties'" (quoting *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (emphasis in original)). Declaratory relief cannot be issued for alleged past harm alone because "declaratory relief 'cannot conceivably remedy any past wrong.'" *DM Arbor Court, Ltd. v. City of Houston*, No. H-18-1884, 2021 WL 4926015, at \*10 (S.D. Tex. Oct. 21, 2021) (quoting *Steel Co.*, 523 U.S. at 103); *see also Bauer*, 341 at 357–358 (explaining plaintiffs must "establish[] 'actual present harm or a significant possibility of future harm" to obtain declaratory relief (quoting *Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998))).

As explained, Funded Plaintiffs here are suffering no present harm—the priority period expired; SBA began processing applications in the manner they desired; they received their RRF awards; they lack live RRF applications; and the RRF itself is no longer operating. Funded Plaintiffs also do not allege that any of the harm they previously experienced is likely to recur, and any such allegation would be highly speculative. Plaintiffs cannot plausibly allege, for example, that Congress intends to enact an entirely new RRF program that Funded Plaintiffs would be eligible for, and that it would again include a prioritization scheme that allegedly harms them. Even if Congress supplied fresh funding for the existing RRF, that would not cause harm to the Funded Plaintiffs, both because the statutory priority period has already run and because the Funded Plaintiffs no longer have live applications with the RRF. A declaration that the priority period in § 5003 is unconstitutional therefore provides no prospective relief to the Funded Plaintiffs and "the issuance of any declaratory relief would effectively be the issuance of an advisory opinion." *Breaux*, 2017 WL

5158699, at *6; *see also Stanley Indus. of S. Fla., Inc. v. JC Penney Co.*, No. CIV A 305-CV-2499-L, 2007 WL 1461391, at *3 (N.D. Tex. May 16, 2007) (declaratory relief "inappropriate" where plaintiff "has not alleged any future harm" and thus "there is no live case or controversy for th[e] court to resolve" (citing *Bauer*, 341 F.3d at 358)).

The Funded Plaintiffs' only claim of forward-looking harm is their baseless assertion that SBA may seek to claw back their awards. But as explained, that allegation is speculative, not imminent, and contradicted by sworn agency affidavit. Moreover, the declaratory relief Plaintiffs *actually* seek does not concern the lawfulness of SBA clawing back the Funded Plaintiffs' awards; rather it concerns the constitutionality of a statutory provision that cannot possibly be applied to these Plaintiffs in the future. Plaintiffs ask for a declaration that § 5003(c)(3)(A) is "unconstitutional because it requires discrimination on account of race and sex in awarding funds under the [RRF]." Second Am. Compl. ¶ 46(a). But the Funded Plaintiffs have already been awarded their funds and so such a declaration would not address any prospective harm. *See Lyons*, 461 U.S. at 102 ("Past exposure to illegal conduct does not itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects."). Accordingly, "[b]ecause there is no ongoing injury . . . and any threat of future injury is neither imminent nor likely, there is not a live case or controversy [as to the Funded Plaintiffs] for this court to resolve and a declaratory judgment would therefore be inappropriate." *Bauer*, 341 F.3d at 358; *see also Machete Prods.*, 809 F.3d at 288 (same).

The lack of any live controversy between the Funded Plaintiffs and Defendants is further illustrated by the fact that the Second Amended Complaint does not purport to even plead a cause of action on their behalf, never mind a plausible one. "Entitlement to declaratory relief is dependent upon the plaintiff first pleading a viable underlying cause of action." *Endsley v. Green Tree Servicing LLC*, No. 5:15CV151-RWS-, 2017 WL 1856281, at *11 (E.D. Tex. Feb. 8, 2017) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-171 (5th Cir. 1990) (federal declaratory judgment act is remedial only; it is the underlying cause of action against the plaintiff that is litigated in a suit under the act)). But, setting aside its viability, the only cause of action alleged in the Second Amended Complaint is the *Bivens* claim on behalf of Mr. Loup, Mr. Schiller, and their

restaurants.  *See* Second Am. Compl. ¶¶ 42-44, *id.* at 1-3.  In contrast, the Funded Plaintiffs have "failed to plead any underlying cause of action in connection with or in support of [their] request for declaratory judgment in [their] [Second] Amended Complaint, the live pleading."  *King v. Select Portfolio Servicing, Inc.*, No. 418CV00825ALMCAN, 2019 WL 1141933, at *4 (E.D. Tex. Feb. 26, 2019).

In sum, Plaintiffs' request for declaratory relief cannot sustain subject-matter jurisdiction over the Funded Plaintiffs because those parties allege no present or future injury for any such declaratory relief to address.  Any declaration concerning alleged prior harm caused by the priority period would constitute an impermissible advisory opinion.  Because neither declaratory nor injunctive relief can supply meaningful relief to Funded Plaintiffs at this stage, they should be dismissed from the case.

## III.  Lynds Inn And Its Owner Should Be Dismissed From The Case For Lack Of Subject-Matter Jurisdiction

As explained, Lynds Inn LLC's application was returned to the restaurant due to errors in its application.  *See* June 14, 2021 Miller Decl. ¶¶ 4-5.  Lynds Inn resubmitted its application on June 3, 2021, effectively a month after the other Plaintiffs.  *See* August 3, 2021 Miller Decl. ¶ 9.  Plaintiffs have never disputed these facts; to the contrary, uniquely among all of the Plaintiffs, the Second Amended Complaint omits any reference to when the restaurant's operative RRF application was filed.  *Compare* Second Am. Compl. ¶ 24 (Lynds Inn) *with id.* ¶¶ 22-23, 25-27 (other Plaintiffs).  The restaurant should therefore be dismissed from the case for several reasons.

First, it is not clear from the Second Amended Complaint that Lynds Inn even remains a party to the case.  The complaint seeks no relief on its behalf—it neither alleges that the restaurant is entitled to relief under *Bivens*, *see* Second Am. Compl. ¶¶ 42-43, nor to any form of permanent injunctive relief, *id.* ¶¶ 33, 45, 46(e).  The operative complaint at most asserts a claim for declaratory relief on the restaurant's behalf.  *Id.* ¶ 45(a).  But as with the Funded Plaintiffs, the Second Amended Complaint alleges no ongoing or forward-looking injury sufficient to support such relief for Lynds Inn.  Although the restaurant still nominally has a live application with the RRF, the RRF itself is closed.  Even if the RRF was to resume operation, the Fund no longer employs the prioritization scheme Plaintiffs challenge because the priority period expired on May 24, 2021.  As with the other Plaintiffs, Lynds

Inn has therefore already received "the remedy [it] want[s]" and is "satisfied" with how SBA was processing applications as of the Fund's closure.  Hr'g Tr. at 11:6-8, 11:12-13.

Second, neither the First Amended Complaint nor the operative complaint have ever adequately alleged that Lynds Inn's injury is traceable to the priority period.  Demand for RRF awards significantly outstripped the funding provided by Congress.  Fewer than half of RRF applicants ultimately received awards—approximately 101,000 applicants out of 278,000.  *See* SBA, *SBA Administrator Announces Closure of Restaurant Revitalization Fund Program* (July 2, 2021), https://perma.cc/8SGA-5ERT.  Lynds Inn did not file its operative application (which may yet contain additional errors requiring correction) until June 3, 2021—a month after the application portal opened—and it is therefore not plausible that the restaurant would have received an award, even absent the priority period.  Indeed, SBA had already received applications seeking over $69 billion in RRF awards—more than twice the sum allotted by Congress—from applicants as of May 18, 2021. *See* SBA, *Last Call: Administrator Guzman Announces Final Push for Restaurant Revitalization Fund Applications* (May 18, 2021), https://perma.cc/DJ37-YE8N.  Because Plaintiffs have never plausibly alleged that Lynds Inn's injury is traceable to the priority period, and further because the Second Amended Complaint alleges no ongoing or future risk of harm to the restaurant warranting declaratory relief, it too should be dismissed from the case.

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' request for a permanent injunction and, further, dismiss all claims brought by Plaintiffs Blessed Cajuns, LLC; Janice Smith; Jason Smith; PSBH LLC; Eric Nyman; Lynds Inn, LLC; Andrew Lynds; Heather Brown; OCF Cafe LLC; and Ori Feibush from the case for lack of subject-matter jurisdiction.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Christopher D. Dodge*
Christopher D. Dodge (MA No. 696172)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel: (202) 598-5571
Email: christopher.d.dodge@usdoj.gov

*Attorneys for the Small Business Administration and
Administrator Guzman in her Official Capacity*

## <u>CERTIFICATE OF SERVICE</u>

On November 2, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Christopher D. Dodge*
Christopher D. Dodge
Trial Attorney
United States Department of Justice
