**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

—————————————————————

)
BLESSED CAJUNS, LLC, *et al.*          )
)
     Plaintiffs,                 )
)      Civil Action No. 4:21-cv-677
v.                          )
)
ISABELLA CASILLAS GUZMAN, *et al.*  )
)
     Defendants.           )
)

—————————————————————

**MOTION TO DISMISS CLAIMS AGAINST ADMINISTRATOR ISABELLA
CASILLAS GUZMAN IN HER INDIVIDUAL CAPACITY
<u>AND SUPPORTING MEMORANDUM OF LAW</u>**

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Constitutional Tort Staff
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel, Constitutional Tort Staff
Torts Branch, Civil Division

Juliana MacPherson Barrett
Trial Attorney, Constitutional Tort Staff
Torts Branch, Civil Division
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 616-4326; F: (202) 616-4314
Juliana.M.Barrett@usdoj.gov

*Counsel for Administrator Guzman
in her Individual Capacity*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

I.  The American Rescue Plan Act and the Restaurant Revitalization Fund.............. 2

II.  Plaintiffs Allege Unconstitutional Race- and Sex-Based Preferences in the Administration of the RRF..................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.  The Court Should Dismiss the Claims Against Administrator Guzman in Her Individual Capacity for Lack of Personal Jurisdiction ........................................... 6

II.  The Court Should Not Imply a *Bivens* Remedy Against a Federal Official Overseeing a Nationwide COVID-19 Relief Program ........................................... 9

     A.  *This Case Presents a New Context Requiring a Special Factors Analysis* 10

     B.  *Available Alternative Processes, Including Injunctive Relief, Safeguard the Constitutional Interest*.......................................................................... 11

     C.  *Special Factors Raising Separation-of-Powers Concerns Counsel Hesitation in Implying a* Bivens *Remedy* .................................................... 13

          1.  *Legislative Action in the Areas of COVID-19 Relief and Antidiscrimination Suggests that Congress Did Not Intend to Authorize a* Bivens *Remedy* ......................................................... 13

          2.  *A* Bivens *Action is Not Appropriate Because Plaintiffs Seek to Challenge Government Policy* ..................................................... 15

          3.  *Implying a* Bivens *Action Would Consume Extensive Time and Resources During a Global Pandemic* ......................................... 16

III.  Administrator Guzman Is Entitled to Qualified Immunity ................................... 17

     A.  *The Unfunded Plaintiffs Have Not Plausibly Alleged that Administrator Guzman Violated Their Clearly Established Right to Equal Protection* .. 19

     B.  *The Unfunded Plaintiffs Have Not Established that Administrator Guzman Personally Participated in the Alleged Unlawful Conduct* ...................... 24

CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

**Federal Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004) ...................................................................... 12
*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995)...................................................................................... 19
*Air Sunshine, Inc. v. Carl*,
  663 F.3d 27 (1st Cir. 2011) .......................................................................... 12
*Anderson v. Creighton*,
  483 U.S. 635 (1987)................................................................................ 18, 24
*Anderson v. United States*,
  No. 4:18-cv-0871-O, 2021 WL 4990798 (N.D. Tex. Oct. 26, 2021) ........... 10
*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009).......................................................................... 13
*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)...................................................................................... 20
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................ 18, 24, 25
*Attkisson v. Holder*,
  925 F.3d 606 (4th Cir. 2019) ........................................................................ 13
*Bagola v. Kindt*,
  131 F.3d 632 (7th Cir. 1997) ........................................................................ 12
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 18
*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
  403 U.S. 388 (1971)............................................................................ 1, 3, 4
*Brown v. Callahan*,
  623 F.3d 249 (5th Cir. 2010) ........................................................................ 23
*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................................ 7
*Bush v. Lucas*,
  462 U.S. 367 (1983)................................................................................ 12, 17
*Califano v. Webster*,
  430 U.S. 313 (1977)...................................................................................... 22
*Canada v. United States*,
  950 F.3d 299 (5th Cir. 2020) .......................................................... 10, 13, 15
*Cantú v. Moody*,
  933 F.3d 414 (5th Cir. 2019) ........................................................................ 10
*Carlson v. Green*,
  446 U.S. 14 (1980)........................................................................................ 10
*Cinel v. Connick*,
  15 F.3d 1338 (5th Cir. 1994) ...................................................................... 4, 5
*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)...................................................................................... 19
*City of Richmond v. J.A. Croson Co.*,
  488 U.S. 469 (1989)...................................................................................... 21

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)............................................................................................ 16
*Cortez III Serv. Corp. v. NASA*,
    950 F. Supp. 357 (D.D.C. 1996) ....................................................................... 22
*Davis v. Passman*,
    442 U.S. 228 (1979)............................................................................................ 9
*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018) ........................................................................................ 19
*Doe v. Am. Nat'l Red Cross*,
    112 F.3d 1048 (9th Cir. 1997) ............................................................................ 8
*Dudley v. United States*,
    No. 4:19-cv-317-O, 2020 WL 532338 (N.D. Tex. Feb. 3, 2020) ................ 12, 15
*Dyer v. Houston*,
    964 F.3d 374 (5th Cir. 2020) ............................................................................ 18
*Farah v. Weyker*,
    926 F.3d 492 (8th Cir. 2019) ............................................................................ 12
*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)............................................................................................ 7
*Greer's Ranch Cafe v. Guzman*,
    No. 4:21-CV-00651-O, 2021 WL 2092995 (N.D. Tex. May 18, 2021)................ 20
*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*,
    981 F.2d 50 (2d Cir. 1992)................................................................................ 20
*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)............................................................................................ 7
*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)..................................................................................... 9, 13
*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)............................................................................................ 7
*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) .............................................................................. 7
*Juan Antonio Sanchez, PC v. Bank of S. Tex.*,
    494 F. Supp. 3d 421 (S.D. Tex. 2020) .............................................................. 14
*Liff v. Off. of Inspector Gen. for the U.S. Dep't of Lab.*,
    881 F.3d 912 (D.C. Cir. 2018)........................................................................... 12
*Malley v. Briggs*,
    475 U.S. 335 (1986)..................................................................................... 19, 20
*Maria S. ex rel. E.H.F. v. Garza*,
    912 F.3d 778 (5th Cir. 2019) ............................................................................ 13
*McCabe v. Basham*,
    450 F. Supp. 2d 916 (N.D. Iowa 2006)............................................................... 8
*McClendon v. City of Columbia*,
    305 F.3d 314 (5th Cir. 2002) ............................................................................ 17
*Meyers v. Textron, Inc.*,
    540 F. App'x 408 (5th Cir. 2013) ....................................................................... 4
*Miller v. U.S. Dep't of Agric. Farm Servs. Agency*,
    143 F.3d 1413 (11th Cir. 1998) ........................................................................ 12
*Munns v. Clinton*,
    822 F. Supp. 2d 1048 (E.D. Cal. 2011)............................................................... 9

*Oliva v. Nivar,*
   973 F.3d 438 (5th Cir. 2020) ........................................................... 10

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ........................................................................ 18

*Price ex rel. Price v. La. Dep't of Educ.,*
   329 F. App'x 559 (5th Cir. 2009) .................................................... 15

*Rudebusch v. Hughes,*
   313 F.3d 506 (9th Cir. 2002) ........................................................... 20

*Sangha v. Navig8 ShipManagement Private Ltd.,*
   882 F.3d 96 (5th Cir. 2018) ............................................................... 8

*Saucier v. Katz,*
   533 U.S. 194 (2001) ................................................................. 18, 20

*Schweiker v. Chilicky,*
   487 U.S. 412 (1988) ................................................................. 13, 14

*Shaw v. Hunt,*
   517 U.S. 899 (1996) ........................................................................ 21

*Shotz v. City of Plantation,*
   344 F.3d 1161 (11th Cir. 2003) ....................................................... 15

*Shumpert v. City of Tupelo,*
   905 F.3d 310 (5th Cir. 2018) ........................................................... 18

*Tun-Cos v. Perrotte,*
   922 F.3d 514 (4th Cir. 2019) ........................................................... 11

*United States v. Paradise,*
   480 U.S. 149 (1987) ........................................................... 22, 23, 24

*United States v. Virginia,*
   518 U.S. 515 (1996) ................................................................. 19, 22

*Vitolo v. Guzman,*
   999 F.3d 353 (6th Cir. 2021) ........................................................... 20

*Vu v. Meese,*
   755 F. Supp. 1375 (E.D. La. 1991) ................................................... 8

*W. Radio Servs. Co. v. U.S. Forest Serv.,*
   578 F.3d 1116 (9th Cir. 2009) ......................................................... 12

*W. States Paving Co. v. Wash. State Dep't of Transp.,*
   407 F.3d 983 (9th Cir. 2005) ........................................................... 21

*Walden v. Fiore,*
   571 U.S. 277 (2014) ..................................................................... 7, 8

*Wilkie v. Robbins,*
   551 U.S. 537 (2007) ................................................................... 9, 15

*Wygant v. Jackson Bd. of Educ.,*
   476 U.S. 267 (1986) ........................................................................ 21

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ............................................................ passim

**Federal Statutes**

5 U.S.C. § 706 .................................................................................... 12

15 U.S.C. § 632(n) ............................................................................... 2

15 U.S.C. § 632(q) ............................................................................... 2

15 U.S.C. § 637(a)(4)(A) ................................................................. 2, 3
20 U.S.C. § 1681 .............................................................................. 15
42 U.S.C. § 2000d ........................................................................... 15
Pub. L. No. 116-123 ......................................................................... 14
Pub. L. No. 116-136 ......................................................................... 14
Pub. L. No. 116-139 ......................................................................... 14
Pub. L. No. 116-142 ......................................................................... 14
Pub. L. No. 116-147 ......................................................................... 14
Pub. L. No. 116-260 ......................................................................... 14

**State Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 ..................................... 7

**Federal Rules**

Fed. R. Civ. P. 4(k)(1)(A) ................................................................. 6
Fed. R. Civ. P. 12(b)(2) .................................................................. 1, 6
Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 9

**Federal Regulations**

13 C.F.R. § 124.103(b)(1) ............................................................. 3, 4
13 C.F.R. § 124.103(b)(3) ........................................................... 3, 23
13 C.F.R. § 124.103(c) ................................................................ 3, 23
13 C.F.R. § 124.104(c) ..................................................................... 3

**Official Government Publications**

Memo. from N. Velázquez to Members, Chairwoman, Comm. on Small Bus., *Full Committee Hearing: "Long-Lasting Solutions for a Small Business Recovery"* (July 15, 2020), https://perma.cc/QKC9-DQQS ................................................. 21
Memo. from N. Velázquez to Members, Chairwoman, Comm. on Small Bus., *Full Committee Hybrid Hearing: "State of the Small Business Economy in the era of COVID-19"* (Feb. 4, 2021), https://perma.cc/JH7Z-26K8 .......................... 23
SBA, *The SBA Funds 16,000 Restaurant Revitalization Fund Awards* (May 10, 2021), https://perma.cc/UN7P-APEZ ............................................................... 4
SBA, *Recovery for the Smallest Restaurants and Bars: Administrator Guzman Announces Latest Application Data Results for the Restaurant Revitalization Fund* (May 12, 2021), https://perma.cc/3SQB-TWYF .......................................... 4
SBA, *SBA Administrator Announces Closure of Restaurant Revitalization Fund Program* (July 2, 2021), https://perma.cc/YU44-PJWV ......................................... 5
SBA, *Restaurant Revitalization Funding Program: Program Guide as of April 28, 2021*, https://perma.cc/WS6A-9L45 ........................................................... 4

## INTRODUCTION

Defendant Isabella Casillas Guzman, Administrator of the Small Business Administration ("SBA"), hereby moves to dismiss all claims against her in her individual capacity pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *See* Second Am. Compl. ("SAC"), ECF No. 40.

Plaintiffs are restaurants and their owners who claim unlawful discrimination in the administration of the Restaurant Revitalization Fund ("RRF"), an economic relief program created by Congress to assist small businesses in the food and beverage industry harmed by the COVID-19 pandemic. Plaintiffs GBB Hospitality Group LLC[1] and 7th Avenue Property Management Inc., and their owners Jimmy Loup and Eric Schiller, contend that their applications for RRF funding were not approved because the SBA and Administrator Guzman deployed unconstitutional race- and sex-based preferences in administering the program, thereby violating their Fifth Amendment right to equal protection. These Plaintiffs now seek monetary relief in the amount of their requested RRF grants directly from the personal assets of Administrator Guzman pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), without regard to the restrictions of the program. *See* SAC ¶ 44. The claims fail as a matter of law.

*First*, the Court lacks personal jurisdiction over Administrator Guzman because Plaintiffs have not established that she has the requisite minimum contacts with Texas. *Second*, a *Bivens* remedy is not available under the unique circumstances of this case because alternative processes exist to safeguard the constitutional interest and because

---

[1] GBB Services LLC, a pass-through payroll company owned by GBB Hospitality Group LLC, is also a Plaintiff. *See* SAC ¶ 14. Because it appears that only one RRF application was submitted on behalf of the two entities, *see* SAC, Ex. 2, we will refer to them collectively herein as "GBB Hospitality Group LLC."

special factors—including significant separation-of-powers concerns—make implying a judge-made remedy within the context of federal COVID-19 relief inappropriate. *Finally*, even if a *Bivens* remedy were available, Administrator Guzman is entitled to qualified immunity because Plaintiffs have failed to plausibly allege that she violated clearly established law or personally participated in the alleged unconstitutional conduct.

## BACKGROUND

### I.     The American Rescue Plan Act and the Restaurant Revitalization Fund

In March 2021, Congress passed the American Rescue Plan Act of 2021 ("ARPA"), which provided widespread relief related to the ongoing COVID-19 pandemic. Relevant here, section 5003 of the Act appropriated $28.6 billion to create the Restaurant Revitalization Fund ("RRF"). *See* ARPA § 5003(b); SAC at 1, ¶ 20. The RRF, which has since closed, was administered by the SBA and provided grants to restaurants adversely impacted by the pandemic. *See* SAC at 1, ¶ 20. Grant recipients were not required to repay the funds provided they were used on specified eligible expenses. *See* ARPA §§ 5003(c)(5)-(6). The Act further provided that, during the first twenty-one days of the RRF's operation, the SBA Administrator:

> shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 3(n) of the Small Business Act (15 U.S.C. 632(n))), small business concerns owned and controlled by veterans (as defined in section 3(q) of such Act (15 U.S.C. 632(q))), or socially and economically disadvantaged small business concerns (as defined in section 8(a)(4)(A) of the Small Business Act (15 U.S.C. 637(a)(4)(A))).

ARPA § 5003(c)(3)(A).

Under the Small Business Act, a business is "owned and controlled by women" if "at least 51 percent of [the] small business concern is owned by one or more women" and "the management and daily business operations of the business are controlled by one or more women." 15 U.S.C. § 632(n). Section 8(a) of the Act defines "[s]ocially

2

disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." *Id.* § 637(a)(5). "Economically disadvantaged individuals," in turn, are "socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." *Id.* § 637(a)(6)(A). Because the priority period was open to "socially and economically disadvantaged small business concerns," applicants must meet both criteria to qualify.

SBA regulations provide additional guidance regarding these categories. For instance, there is a presumption that certain minority groups—"Black Americans; Hispanic Americans; Native Americans . . . ; Asian Pacific Americans . . . ; [and] Subcontinent Asian Americans . . ."— are "socially disadvantaged." *See* 13 C.F.R. § 124.103(b)(1). This presumption may be rebutted with "credible evidence to the contrary." *Id.* § 124.103(b)(3). Additionally, those who are not presumptively socially disadvantaged may establish individual social disadvantage by providing evidence of a distinguishing feature that has limited their advancement or entry into the business world. *See id.* §§ 124.103(c)(1)-(2). Distinguishing features are not limited to race and may include, for example, a "physical handicap." *Id.* § 124.103(c)(1). Consequently, individuals of any race may qualify as socially disadvantaged.

To determine whether an individual qualifies as economically disadvantaged, the SBA "examine[s] factors relating to the personal financial condition of [the] individual . . ., including income for the past three years . . . , personal net worth, and the fair market value of all assets . . . ." *Id.* § 124.104(c). "An individual who exceeds any one of the

thresholds"—for example, a net worth of over $750,000—"will generally be deemed . . . not economically disadvantaged." *Id.*

The RRF application period opened on May 3, 2021. SBA, *The SBA Funds 16,000 Restaurant Revitalization Fund Awards* (May 10, 2021), https://perma.cc/UN7P-APEZ ("May 10 Press Release").[2] In accordance with section 5003(c)(3)(A) of the ARPA, the SBA announced that, during the first twenty-one days of the program, it would "accept applications from all eligible Applicants" but would "distribute funds only for approved applications where the Applicant . . . meets the eligibility requirements for a small business concern at least 51 percent owned and controlled by women, veterans, or socially and economically disadvantaged individuals." SBA, *Restaurant Revitalization Funding Program: Program Guide as of April 28, 2021*, at 16, https://perma.cc/WS6A-9L45. Within days of the program's launch, it became clear that the demand for RRF awards far outweighed the appropriated funds. On May 10, 2021, the SBA announced that "the number of applications received so far could exhaust the funds authorized to fund the RRF." May 10 Press Release. Moreover, "[a]pplications from women, veterans, and socially and economically disadvantaged business owners" totaled $29 billion. SBA, *Recovery for the Smallest Restaurants and Bars: Administrator Guzman Announces Latest Application Data Results for the Restaurant Revitalization Fund* (May 12, 2021), https://perma.cc/3SQB-TWYF. These announcements raised concerns that the RRF funds could be depleted before the 21-day priority period expired and the SBA began processing applications from other eligible businesses.

---

[2] In ruling on a motion to dismiss, a court "may take into account . . . items subject to judicial notice [and] matters of public record," such as government press releases and official congressional documents. *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409-10 (5th Cir. 2013); *accord Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

The SBA announced the closure of the RRF on July 2, 2021. SBA, *SBA Administrator Announces Closure of Restaurant Revitalization Fund Program* (July 2, 2021), https://perma.cc/YU44-PJWV. As of June 30, 2021, approximately 101,000 restaurants had been awarded RRF funds. *Id.* The requests for funds far exceeded the amount available, with more than 278,000 eligible applications requesting over $72.2 billion. *Id*. According to the SBA, approximately $18 billion in RRF funds were awarded to underserved populations, including women-owned businesses, veteran-owned businesses, and businesses owned by socially and economically disadvantaged populations. *Id.*

## II.     Plaintiffs Allege Unconstitutional Race- and Sex-Based Preferences in the Administration of the RRF

Plaintiffs allege unconstitutional race- and sex-based discrimination in the administration of the RRF because they were not eligible for the 21-day priority period. Plaintiffs filed their original complaint against the SBA and Administrator Guzman in her official capacity on May 23, 2021. Compl., ECF No. 1. On May 24, 2021, Plaintiffs sought a preliminary injunction to prevent the disbursement of RRF funds on race- or sex-based grounds. Mot. for Prelim. Inj. and Mem. in Supp., ECF Nos. 6, 7. After expedited briefing, the Court granted Plaintiffs' motion, finding that they were likely to succeed on the merits of their equal protection claim. Order, ECF No. 18, at 7-9. The Court ordered Defendants to process Plaintiffs' applications for RRF funding "as if the SBA had initiated processing of those applications at the time the applications were filed." *Id.* at 11.

Plaintiffs filed their First Amended Complaint on June 3, 2021. ECF No. 21. The same day, the Court held a hearing during which the parties discussed whether Plaintiffs' claims had become moot. *See* ECF No. 35-3. On July 30, 2021, Plaintiffs moved to file another amended complaint adding new plaintiffs who, for the first time, sought to assert

claims for damages against Administrator Guzman in her individual capacity. ECF No. 33. The Court granted the motion over the government's objection. ECF No. 39.

The Second Amended Complaint, which is the operative complaint, was filed on August 11, 2021. ECF No. 40. The newly added plaintiffs—GBB Hospitality Group LLC and 7th Avenue Property Management Inc., and their owners Jimmy Loup and Eric Schiller (the "Unfunded Plaintiffs")—allege that their RRF applications were submitted during the first days of the program and "would have been approved if Administrator Guzman had not deployed the patently unconstitutional use of race and sex preferences that the plaintiffs sued to enjoin." SAC at 2-3, ¶¶ 26-27, 35-36. The Unfunded Plaintiffs seek damages from the Administrator's personal assets under *Bivens* for alleged violations of their Fifth Amendment right to equal protection.

Plaintiffs also sought an injunction and declaratory relief against the official-capacity defendants. *See* SAC ¶¶ 45-46. On November 2, 2021, the government filed a partial motion to dismiss those claims. ECF No. 43. Plaintiffs responded on November 23, 2021, forfeiting their official capacity claims and stating their intention to "prepare a third amended complaint limited to the parties alleging damages under *Bivens* . . . ." ECF No. 52. To date, Plaintiffs have not sought to amend a third time. Thus, the Second Amended Complaint remains the operative complaint for purposes of the individual-capacity claims against Administrator Guzman.

## ARGUMENT

### I.    The Court Should Dismiss the Claims Against Administrator Guzman in Her Individual Capacity for Lack of Personal Jurisdiction

The Unfunded Plaintiffs' claims against Administrator Guzman should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over her in her individual capacity. Federal Rule of Civil Procedure 4(k)(1)(A) authorizes a federal court

to exercise personal jurisdiction over a defendant to the same extent as a state court of general jurisdiction. The Fifth Circuit has observed that "the Texas long-arm statute," Tex. Civ. Prac. & Rem. Code Ann. § 17.042, "extends to the limits of federal due process." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Accordingly, the personal jurisdiction "inquiry collapses into one federal due process analysis." *Id.*[3]

Due process requires that a defendant "have certain minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In other words, the defendant must have "*purposefully* established 'minimum contacts' in the forum State" and intended to derive benefits from his actions there. *Burger King Corp.*, 471 U.S. at 474-76 (emphasis added). In contrast, "the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291.

The Court lacks personal jurisdiction over Administrator Guzman in her individual capacity because the Second Amended Complaint does not allege that she has any contacts in Texas. Rather, any connection to the forum results solely from *Plaintiffs'* connection to

---

[3] Jurisdiction may be either general or specific. General jurisdiction allows a court to "hear any and all claims" against a non-resident defendant when her "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Because Plaintiffs do not allege that Administrator Guzman has any continuous contacts within Texas, we address only specific jurisdiction, which exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

the state.[4] *Walden* forecloses personal jurisdiction under these circumstances. "The proper question is not whether [Plaintiffs] experienced an injury or effect in a particular location, but whether [the Administrator]'s conduct connects [her] to the forum in a meaningful way." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103-04 (5th Cir. 2018). Nothing in the complaint suggests that Administrator Guzman's alleged actions in administering a nationwide program were directed at Texas. Indeed, even if the Administrator purposefully "directed h[er] conduct at plaintiffs whom [s]he knew had [Texas] connections, that still would "not create sufficient contacts" to establish personal jurisdiction. *Walden*, 571 U.S. at 289.

Courts have consistently held that broad, supervisory authority by high-level federal officials over nationwide policies does not establish personal jurisdiction. *See, e.g.*, *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) (no personal jurisdiction in Arizona over FDA Director in Washington, DC, who oversaw regulatory process); *McCabe v. Basham*, 450 F. Supp. 2d 916, 924 (N.D. Iowa 2006) (allegations that federal officials created or followed an unlawful policy "do[] not indicate any act by which [the officials], in their individual capacities, purposefully availed themselves of the privilege of conducting activities within [the forum state]"); *Vu v. Meese*, 755 F. Supp. 1375, 1378 (E.D. La. 1991) ("that federal government officials enforce federal laws and policies on a nationwide basis is not sufficient . . . to maintain personal jurisdiction . . . against those same governmental officials in their individual capacities"). This is the logical conclusion—if "allegations limited to national policy implementation and oversight" were

---

[4] While GBB Hospitality Group LLC is headquartered in Texas and presumably suffered injury there, 7th Avenue Property Management Inc. is headquartered in Florida. SAC ¶¶ 16-17. There is therefore no indication that Plaintiff 7th Avenue or its owner would have suffered any harm in Texas.

sufficient to support a finding of personal jurisdiction, it would "subject [Administrator Guzman] to personal liability in every state . . . regardless of how tenuous [her] actual contacts with a particular forum might be." *Munns v. Clinton*, 822 F. Supp. 2d 1048, 1078 (E.D. Cal. 2011). Because the Unfunded Plaintiffs have failed to allege minimum contacts between Administrator Guzman and Texas, their individual-capacity claims against her must be dismissed.

## II.   The Court Should Not Imply a *Bivens* Remedy Against a Federal Official Overseeing a Nationwide COVID-19 Relief Program

The Unfunded Plaintiffs' *Bivens* claims are subject to dismissal under Rule 12(b)(6) because an implied cause of action under the Constitution is not available under the circumstances of this case. Whenever a plaintiff brings a damages claim against a federal employee for an alleged constitutional violation, a court must decide the antecedent question of whether a *Bivens* cause of action exists at all. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). A *Bivens* remedy "is not an automatic entitlement," and is "in most instances . . . unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). In fact, in the more than fifty years since *Bivens* was decided, the Supreme Court has endorsed such a remedy on only two other occasions and has otherwise "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 741, 743 (2020).

The first question in determining whether a cause of action exists is whether the claim at issue seeks to extend *Bivens* into a new context. A case presents a new context when it differs "in a meaningful way from [any of the three] previous *Bivens* cases decided by th[e] [Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. These are *Bivens* itself, which involved "manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment"; *Davis v. Passman*, 442 U.S. 228 (1979), which alleged "discrimination on the basis of sex by a congressman against a staff person in

violation of the Fifth Amendment"; and *Carlson v. Green*, 446 U.S. 14 (1980), which alleged "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). "Virtually everything else is a 'new context.'" *Id.*

Whenever a case presents a new context, a court must determine whether it is appropriate to "expand[]" *Bivens* into that context, mindful that doing so is "a disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857 (internal citation omitted). Courts should consider "any alternative, existing process[es] for protecting the [injured party's] interest," as well as any "special factors counselling hesitation" in implying a remedy. *Id.* at 1857-58. "[S]eparation-of-powers principles" are "central to th[is] analysis." *Id.* at 1857. The court should ask "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. "The answer most often will be" no. *Id.* at 1857.

### A.     *This Case Presents a New Context Requiring a Special Factors Analysis*

This case presents a new context because it differs in several material aspects from the three *Bivens* claims recognized by the Supreme Court. Although this case bears the closest resemblance to *Davis*, which also involved an equal protection claim, Plaintiffs' "reliance on *Davis* is misplaced." *Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020); SAC ¶ 44. Indeed, a context may be new even if a plaintiff "asserts a violation of the same clause of the same amendment in the same way" as one of Supreme Court's prior *Bivens* cases. *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (emphasis removed).

This Court has recognized that "[t]he types of differences that are meaningful enough to make the context 'new' are myriad . . . ." *Anderson v. United States*, No. 4:18-cv-0871-O, 2021 WL 4990798, at *10 (N.D. Tex. Oct. 26, 2021) (O'Connor, J.). Here, the

individual-capacity claims asserted against Administrator Guzman differ in a number of significant ways from the claim in *Davis*. First, the Unfunded Plaintiffs seek money damages from a high-ranking official of the executive branch involved in nationwide policymaking. Not only does Administrator Guzman operate under a different "legal mandate" than the congressman sued in *Davis*, she is part of an entirely distinct branch of government. *Abbasi*, 137 S. Ct. at 1860. The Unfunded Plaintiffs thus seek to extend *Bivens* to a new category of defendants. *Id.* at 1857.

The individual-capacity claims against Administrator Guzman also "implicate[] broad policy concerns" that were not present in prior *Bivens* cases. *Tun-Cos v. Perrotte*, 922 F.3d 514, 524 (4th Cir. 2019). The RRF was created to assist small businesses impacted by an unprecedented global pandemic. In creating the program, Congress and the SBA made judgments about how to allocate finite funding to ensure that the most underserved communities could benefit. No such concerns were present in *Bivens*, *Carlson*, or *Davis*. For these reasons, the Unfunded Plaintiffs' claims against the Administrator plainly present a new context and a special factors analysis is "required before allowing this damages suit to proceed." *Abbasi*, 137 S. Ct. at 1860.

**B.    *Available Alternative Processes, Including Injunctive Relief, Safeguard the Constitutional Interest***

The Court should decline to extend *Bivens* to this new context because alternative processes exist to protect the constitutional interest at stake. Where, as here, "alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863.

First, the Unfunded Plaintiffs could have sought injunctive relief. Indeed, a number of the original Plaintiffs in this lawsuit did so successfully and were ultimately awarded funds under the RRF. *See* Order, ECF No. 18; SAC ¶¶ 31. The availability of an avenue to pursue injunctive relief is "of central importance" in deciding whether to imply a *Bivens*

remedy. *Abbasi*, 137 S. Ct. at 1862; *accord Dudley v. United States*, No. 4:19-cv-317-O, 2020 WL 532338, at *8 (N.D. Tex. Feb. 3, 2020) (O'Connor, J.) (finding the ability to seek an injunction was an alternative remedy precluding a *Bivens* claim). The Administrative Procedure Act ("APA"), for example, allows for judicial review of final agency actions and provides for various forms of relief. *See* 5 U.S.C. § 706. Courts have consistently declined to supplement the APA's procedures with a judicially implied cause of action under *Bivens*. *See, e.g.*, *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009); *Miller v. U.S. Dep't of Agric. Farm Servs. Agency*, 143 F.3d 1413, 1416 (11th Cir. 1998).

Importantly, it does not matter whether the Unfunded Plaintiffs could ultimately recover under the APA or whether the APA provides them with "complete relief." *Bush v. Lucas*, 462 U.S. 367, 388 (1983). The deciding factor is that, in fashioning the APA, Congress "'provided what [it] believes to be adequate remedies'" with respect to challenged agency actions. *W. Radio Servs.*, 578 F.3d at 1123 (quoting *Adams v. Johnson*, 355 F.3d 1179, 1185 (9th Cir. 2004)). Implying an additional judge-made remedy would "upset the . . . 'remedial structure'" fashioned by Congress. *Farah v. Weyker,* 926 F.3d 492, 502 (8th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1858).

Finally, Plaintiffs may have additional options for relief available to them, including access to other federal programs intended to support small businesses during the pandemic. *See infra* II.C.1. It is not necessary to divine all potential avenues for alternative forms of relief, however. *See Liff v. Off. of Inspector Gen. for the U.S. Dep't of Lab.*, 881 F.3d 912, 921 (D.C. Cir. 2018). Provided there is "a forum where the allegedly unconstitutional conduct would come to light"—as there is here—a *Bivens* remedy ought not to be implied. *Bagola v. Kindt*, 131 F.3d 632, 642-43 (7th Cir. 1997).

### C. Special Factors Raising Separation-of-Powers Concerns Counsel Hesitation in Implying a *Bivens* Remedy

Aside from the foregoing alternative processes, there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" in this case. *Abbasi*, 137 S. Ct. at 1858. Courts should decline to imply a *Bivens* cause of action if there are "special factors counselling hesitation." *Id.* at 1857. This is a "remarkably low" standard, *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009), which applies whenever a court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants." *Hernandez*, 140 S. Ct. at 743. "If any special factors do exist, the[] 'court[] *must refrain* from creating' an implied cause of action." *Canada*, 950 F.3d at 309 (quoting *Maria S. ex rel. E.H.F. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019)) (emphasis in original).

#### 1. Legislative Action in the Areas of COVID-19 Relief and Antidiscrimination Suggests that Congress Did Not Intend to Authorize a Bivens Remedy

First, legislative action "suggests that Congress's 'failure to provide a damages remedy' . . . is 'more than inadvertent,' and strongly counsels hesitation before creating such a remedy." *Attkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1862).

Since the early days of the COVID-19 pandemic, "[c]ongressional attention" to the economic challenges facing small businesses impacted by the public health crisis has been "frequent and intense." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988) (no *Bivens* cause of action for alleged unconstitutional denial of social security benefits where Congress had legislated extensively in the field). On March 6, 2020, Congress passed the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, which made the COVID-19 public health emergency a disaster for purposes of the Small Business Act and allowed the SBA to make Economic Injury Disaster Loans ("EIDL") to eligible small

businesses. Pub. L. No. 116-123, 134 Stat 146 (2020). On March 27, 2020, Congress

passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which

established the Paycheck Protection Program ("PPP"). Pub. L. No. 116-136, 134 Stat. 281

(2020). Congress initially appropriated $349 billion for PPP loans, which are guaranteed by

the SBA and forgivable if used for certain purposes. *See* CARES Act §§ 1102(b)(1), 1106.

Since March 2020, Congress has continued to supplement and make changes to the

economic relief programs administered by the SBA. Subsequent legislation appropriated

additional funding, amended provisions of the PPP, and created new programs to aid

struggling businesses. *See, e.g.*, Paycheck Protection Program and Health Care

Enhancement Act, Pub. L. No. 116-139, § 101, 134 Stat. 620 (2020); Paycheck Protection

Program Flexibility Act of 2020, Pub. L. No. 116-142, 134 Stat. 641 (2020); Pub. L. No.

116-147, 134 Stat. 660 (2020); Economic Aid to Hard-Hit Small Businesses, Nonprofits, and

Venues Act, Pub. L. No. 116-260, § 324, 134 Stat. 1182 (2020). Despite the legislature's

demonstrated attention to these economic relief programs, it has chosen not to create a

private cause of action against individual federal officials, and declined to do so yet again

when passing the ARPA. *See, e.g.*, *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F.

Supp. 3d 421, 434 (S.D. Tex. 2020) (finding no private cause of action under the CARES

Act). That "Congress had specific occasion to consider" authorizing such a claim, *Abbasi*,

137 S. Ct. at 1865, yet "[a]t no point . . . cho[]se to extend to any person the kind of

remedies [the Unfunded Plaintiffs] seek in this lawsuit," *Schweiker*, 487 U.S. at 426, shows

that a *Bivens* remedy is not appropriate.

Congress has also been very active in the area of antidiscrimination legislation

without ever authorizing the type of claim asserted against Administrator Guzman here. For

example, Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of

race, color, and national origin in programs and activities that receive federal financial assistance. *See* 42 U.S.C. § 2000d**.** Similarly, Title IX of the Educational Amendments of 1972 prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance. *See* 20 U.S.C. § 1681.[5] Other sections of the Civil Rights Act address discrimination on the basis of race or sex in places of public accommodation (Title II), in schools (Title IV), and in employment (Title VII). These represent just a small sample of instances in which Congress has explicitly addressed discrimination on the basis of sex or race. In other legislation, Congress has addressed discrimination in contexts such as voting, housing, and banking.

In sum, it is evident that Congress has had ample "opportunity to create a privately-enforceable damages remedy against federal officials" for the conduct challenged here, yet has consistently "declined to do so." *Dudley*, 2020 WL 532338, at *7. Because Congress's actions suggest that it did not see fit to create a constitutional cause of action for damages, the Court should "stay its *Bivens* hand." *Wilkie*, 551 U.S. at 554.

> 2.  A *Bivens Action is Not Appropriate Because Plaintiffs Seek to Challenge Government Policy*

As previously explained, separation-of-powers principles should guide the *Bivens* analysis. *See, e.g., Canada*, 950 F.3d at 312. Separation-of-powers concerns are particularly acute here because the Unfunded Plaintiffs' *Bivens* claims would "call into question the formulation and implementation of a general policy." *Abbasi*, 137 S. Ct. at 1860. Unlike prior *Bivens* cases endorsed by the Supreme Court, which "challenge[d] individual instances of discrimination or [government] overreach," Plaintiffs' claims

---

[5] Individuals may not be held liable under Title VI or Title IX. *See, e.g.*, *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) (unpublished); *Shotz v. City of Plantation,* 344 F.3d 1161, 1170-71 & n.12 (11th Cir. 2003).

challenge "large-scale policy decisions" about how best to allocate finite funds and implement a nationwide economic relief program. *Id.* at 1862.

Because *Bivens* actions "have never [been] considered a proper vehicle for altering an entity's policy," the Unfunded Plaintiffs' claims against the Administrator should be dismissed. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). The Second Amended Complaint is all but silent as to any allegedly improper actions taken by Administrator Guzman herself; instead, the complaint makes it eminently clear that Plaintiffs' true grievance is with Section 5003(c)(3)(A) of the ARPA and the SBA's application of the 21-day priority period. For example, Plaintiffs allege that "[t]he *Small Business Administration* violated [Plaintiffs'] rights" and that "[t]he *Small Business Administration's* unconstitutional race and sex preferences are the but-for cause of [Plaintiffs'] failure to obtain relief from the Restaurant Revitalization Fund." SAC ¶¶ 42-43 (emphasis added). No similar allegations are made against the Administrator personally. Moreover, the complaint specifically seeks a declaration that section 5003(c)(A) is unconstitutional, revealing that Plaintiffs' real challenge is to the statute itself. *See* SAC ¶¶ 45-46. The fact that Plaintiffs seek to attack policy decisions through the mechanism of a *Bivens* action is another special factor counseling hesitation.

### 3. Implying a Bivens Action Would Consume Extensive Time and Resources During a Global Pandemic

Finally, implying a *Bivens* remedy in this context could lead to expansive litigation and place undue strain on government resources during a time when they are especially needed. The Supreme Court has recognized that "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Abbasi*, 137 S. Ct. at 1858. *Bivens* actions not only impose "burdens on . . . employees who are sued personally," they also "create substantial costs" for the government. *Id.* at 1856,

1858. This is particularly true when the individual-capacity defendants are high-level executive officials like Administrator Guzman, "for the burden and demand of litigation might well prevent them . . . from devoting the time and effort required for the proper discharge of their duties." *Id.* at 1860.

Implying a *Bivens* cause of action here would enable countless entities that did not qualify for the RRF priority period or did not receive RRF funds to sue the Administrator in her individual capacity. As discussed above, applications by eligible entities outweighed the appropriated funds by a factor of nearly 3 to 1—$72 billion to $28.6 billion. Authorizing a *Bivens* remedy could thus expose Administrator Guzman to tens of billions of dollars in personal liability. Moreover, defending these lawsuits would consume valuable government resources during a time when they are needed to address the current public health and economic crisis. Under these circumstances, "Congress is in a far better position than a court to evaluate the impact of a new species of litigation." *Bush*, 462 U.S. at 389. Unlike the judiciary, Congress "may inform itself through factfinding procedures" and thereby make informed decisions regarding how best to "balanc[e] governmental efficiency" against individual rights and interests. *Id.* For these reasons, the Court should exercise judicial restraint and decline to authorize the expansive *Bivens* remedy the Unfunded Plaintiffs seek here.

### III.   Administrator Guzman Is Entitled to Qualified Immunity

Finally, even assuming a *Bivens* remedy were available, the Unfunded Plaintiffs' individual-capacity claims are nevertheless subject to dismissal because Administrator Guzman is entitled to qualified immunity. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002). The Supreme Court has provided a

two-part inquiry for the qualified immunity analysis. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A court first asks whether the facts alleged, viewed in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Next, the court must consider whether the right at issue was "clearly established" at the time of the alleged violation. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

To survive the first prong of qualified immunity on a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should accept as true only the complaint's well-pleaded factual allegations, setting aside any "formulaic recitation of the elements" or legal conclusions. *Id.* (quoting *Twombly*, 550 U.S. at 555). Under the second prong of the qualified immunity analysis, the plaintiff must point to case law in a similar context that clearly establishes the right in question. *See Saucier*, 533 U.S. at 209. In determining whether a right is clearly established, the Fifth Circuit looks to controlling precedent of the Fifth Circuit or the Supreme Court, *Dyer v. Houston*, 964 F.3d 374, 384 (5th Cir. 2020), but may also consider whether "a robust 'consensus of cases of persuasive authority'" plainly establishes the unlawfulness of the challenged conduct. *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). The case law must define the right in a "particularized" sense and not merely as a general legal principle. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "[t]he precedent must be clear enough that *every reasonable official* would interpret it to establish the particular rule the plaintiff seeks to

apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added). Qualified immunity thus raises a high bar—it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### A. The Unfunded Plaintiffs Have Not Plausibly Alleged that Administrator Guzman Violated Their Clearly Established Right to Equal Protection

The Unfunded Plaintiffs have failed to plausibly allege that Administrator Guzman violated their clearly established constitutional right to equal protection. The Fifth Amendment's equal protection guarantee "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).[6] Certain classifications are subjected to heightened scrutiny. For example, strict scrutiny applies to classifications on the basis of race: they "must serve a compelling governmental interest, and must be narrowly tailored to further that interest." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 235 (1995). The Supreme Court has cautioned that strict scrutiny should not be "strict in theory, but fatal in fact." *Id.* at 237 (internal quotation omitted). Similarly, distinctions on the basis of sex must be "substantially related to the achievement" of "important governmental objectives." *United States v. Virginia*, 518 U.S. 515, 533 (1996). Because it would not have been evident to "every reasonable official" that the RRF priority period violated equal protection, Administrator Guzman is entitled to qualified immunity. *Wesby*, 138 S. Ct. at 590.

As an initial matter, no Supreme Court or Fifth Circuit case clearly establishes the right at issue here, nor is there a robust consensus of persuasive authority placing the

---

[6] The Unfunded Plaintiffs are arguably not similarly situated to "socially and economically disadvantaged" RRF applicants. To qualify for the priority period, applicants must be *both* socially disadvantaged—which includes a presumption based on the applicant's race—and economically disadvantaged. *See supra* at 3. Yet the Plaintiffs concede that they do not "qualify as . . . 'economically disadvantaged individual[s]' under the SBA's regulations." SAC ¶ 28.

"constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).[7]
While existing precedent would have provided *some* guidance regarding the use of race-
and sex-based distinctions intended to remedy prior discrimination, no case law clearly
established the right to equal protection in the novel circumstances presented here—
prioritizing economic relief for a finite period to women- and minority-owned small
businesses harmed by the COVID-19 pandemic. *See Harrison & Burrowes Bridge
Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61-62 (2d Cir. 1992) (observing that the
Supreme Court had made "broad pronouncements" regarding the legality of programs
targeting past discrimination, but "left the validity of particular plans to be assessed on a
case-by-case basis," and granting qualified immunity). Because "[i]t is sometimes difficult
for an officer to determine how the relevant legal doctrine . . . will apply to the factual
situation the officer confronts," *Saucier*, 533 U.S. at 205, courts have granted qualified
immunity even when a constitutional violation has been found. *See, e.g.*, *Rudebusch v.
Hughes*, 313 F.3d 506, 517-19 (9th Cir. 2002) (university president who made race-based
pay adjustments in an effort to comply with federal regulations was entitled to qualified
immunity even though the plaintiff had "established an equal protection violation")*.*

Under the circumstances here, an official could have reasonably, albeit mistakenly,
concluded that the RRF's priority period was constitutionally sound. *See Malley*, 475 U.S.
at 343 (qualified immunity provides "ample room for mistaken judgments"). Remedying
the effects of past or present racial discrimination has been recognized as a compelling

---

[7] Courts have since held that the RRF's priority period did not satisfy equal protection.
*See Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021); *Greer's Ranch Cafe v. Guzman*, No.
4:21-CV-00651-O, 2021 WL 2092995 (N.D. Tex. May 18, 2021). However, those cases
had not been decided at the time of the Unfunded Plaintiffs' alleged injuries and are not
controlling law within the Fifth Circuit. Therefore, they do not constitute clearly
established precedent for purposes of the qualified immunity analysis.

government interest. *See, e.g.*, *Shaw v. Hunt*, 517 U.S. 899, 909 (1996). Relatedly, "[t]he federal government has a compelling interest in ensuring that its funding is not distributed in a manner that perpetuates the effects of either public or private discrimination . . . ." *W. States Paving Co. v. Wash. State Dep't of Transp.*, 407 F.3d 983, 991 (9th Cir. 2005). To satisfy strict scrutiny, such racial classifications must be grounded in a "'strong basis in evidence for [the] conclusion that remedial action was necessary.'" *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989) (quoting *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 277 (1986)). Mere "generalized assertion[s]" of past discrimination are insufficient. *Id.* at 498.

Before passing the ARPA, Congress reviewed evidence about the impact of the pandemic on small businesses owned by women and minorities and the ability of those groups to access federal relief programs. For example, legislators considered data showing that "minority and women business owners ha[d] struggled to receive pandemic relief from the Federal government." Memo. from N. Velázquez to Members, Chairwoman, Comm. on Small Bus., *Full Committee Hearing: "Long-Lasting Solutions for a Small Business Recovery"* at 5 (July 15, 2020), https://perma.cc/QKC9-DQQS. This was particularly problematic in light of the fact that the "COVID-19 public health and economic crisis ha[d] disproportionally affected Black, Hispanic, and Asian-owned businesses, in addition to women-owned businesses." *Id.* at 4. Moreover, small businesses in the restaurant industry were some of the "hardest hit." *Id.* at 4 & n.19. Far from mere "generalized assertion[s]" of past discrimination, Congress considered specific data and findings related to small businesses in the food and beverage industry that had been disproportionately impacted by the COVID-19 pandemic, and that had not been adequately served by prior federal relief programs. In light of the above, it would not have been unreasonable for Administrator

Guzman to believe that Congress had a "strong basis in evidence" for creating a racial distinction in the RRF, or for her to defer to those findings.[8]

For similar reasons, it cannot be said that no reasonable official would have believed that the sex-based classification was "substantially related to the achievement" of an "important governmental objective[]." *Virginia*, 518 U.S. at 533. In *Califano v. Webster*, the Supreme Court held that "[r]eduction of the disparity in economic condition between men and women caused by the long history of discrimination. . . [is] an important governmental objective." 430 U.S. 313, 317 (1977) (per curiam). A reasonable official could have believed that the sex-based distinctions applied during the RRF priority period served an important government objective in light of the evidence before Congress.

Second of all, it was not clearly established that the race- and sex-based distinctions applied during the priority period were not appropriately tailored to remedying disparities in access to COVID-related federal relief programs. Courts should consider several factors in determining whether a distinction is narrowly tailored, "including the necessity for the relief and the efficacy of alternative remedies; the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties." *United States v. Paradise*, 480 U.S. 149, 171 (1987). The RRF's priority period satisfied many of these factors. First, Congress previously considered and tried alternative means of reaching underserved minority populations. For example, the CARES Act stated that it was "the sense of the Senate that the [SBA] Administrator should . . . ensure that the processing and

---

[8] This conclusion is underscored by the fact that courts had previously upheld the constitutionality of section 8(a) of the Small Business Act and the accompanying regulations challenged here. *See Cortez III Serv. Corp. v. NASA*, 950 F. Supp. 357, 361 (D.D.C. 1996) (concluding that section "8(a) meets constitutional muster" because "the legislation and related regulations are narrowly tailored").

disbursement of covered loans prioritizes . . . small business concerns owned and controlled by socially and economically disadvantaged individuals . . . [and] women . . . ." CARES Act § 1102(a)(2)(36)(P)(iv). In other legislation, Congress made efforts to reach traditionally underserved communities through the use of set-asides. *See* Memo. from N. Velázquez to Members, Chairwoman, Comm. on Small Bus., *Full Committee Hybrid Hearing: "State of the Small Business Economy in the era of COVID-19"* at 7 (Feb. 4, 2021), https://perma.cc/JH7Z-26K8. Yet women- and minority-owned small businesses continued to face challenges accessing federal relief. The racial classifications employed during the RRF priority period were also "flexible in application," *Paradise*, 480 U.S. at 177, because the race-based presumption could be rebutted and the SBA regulations permitted individuals of any race to qualify as socially disadvantaged. *See* 13 C.F.R. §§ 124.103(b)(3), 124.103(c)(1)-(2). That the priority period was "temporary" is another way in which it was tailored to the governmental interest. *Paradise*, 480 U.S. at 178.

Finally, the 21-day priority period—at least in theory—"did not impose an unacceptable burden on innocent third parties" *Id.* at 182. It only became problematic because of the overwhelming demand and the risk that the RRF funds could expire before the SBA began processing non-priority applications. But, in evaluating an assertion of qualified immunity, a court must judge "[a]n official's actions . . . in light of the circumstances that confronted h[er], without the benefit of hindsight." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Both at the time the SBA issued its initial RRF guidance in April 2021 and at the time the Unfunded Plaintiffs submitted their applications in early May, it was far from clear that the appropriated funds would be so quickly exhausted. And there was always the possibility that Congress would appropriate additional funds, as it had for other pandemic-related federal relief programs. *See supra* II.C.1. If that were the case,

then the priority period would have "only postpone[d]" access to RRF funds—a much "lesser burden" than the denial of funding altogether. *Paradise*, 480 U.S. at 183. Because the use of race- and sex-based classifications in the RRF were tailored in a number of important ways, it would not have been evident to every reasonable official that the 21-day priority period violated equal protection.[9]

### B.     *The Unfunded Plaintiffs Have Not Established that Administrator Guzman Personally Participated in the Alleged Unlawful Conduct*

Finally, Administrator Guzman is entitled to qualified immunity because Plaintiffs have not established that she personally participated in the alleged constitutional violations. To survive a motion to dismiss, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). It is not sufficient, for example, to allege that the defendant was the "principal architect" of a policy or "instrumental in [its] adoption, promulgation, and implementation," for these are conclusory allegations that are not entitled to the presumption of truth. *Id.* at 669. Here, the Unfunded Plaintiffs do not allege that Administrator Guzman personally reviewed or made any decisions regarding their RRF applications. Nor do they allege that she created either the race- and sex-based distinctions used during the 21-day priority period at issue here. To the contrary, the Second Amended Complaint alleges that the ARPA "*required* Administrator Guzman to give discriminatory preferences to restaurants owned by women and racial minorities." SAC at 1 (emphasis added).

Nor can the Unfunded Plaintiffs "plead sufficient factual matter to show" that Administrator Guzman took any actions with respect to the RRF "for the *purpose of*

---

[9] Indeed, members of Congress evidently believed that the classifications were lawful when they enacted section 5003(c)(3)(A) of the ARPA.

discriminating." *Iqbal*, 556 U.S. at 677 (emphasis added). To overcome qualified immunity, Plaintiffs must show that the Administrator adopted or implemented an unconstitutional policy "*because of*, not merely in spite of, its adverse effects" on a particular group. *Id.* at 681 (internal quotations omitted and emphasis added). But here there is another obvious conclusion—that any challenged actions taken by the Administrator during the first twenty-one days of the RRF were taken for the purpose of complying with the statutory demand to "prioritize awarding grants to . . . small business concerns owned and controlled by women . . ., veterans . . . , or socially and economically disadvantaged" individuals. ARPA § 5003(c)(3)(A). Because the Unfunded Plaintiffs have not plausibly alleged that the Administrator personally participated in the alleged unlawful conduct, she is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted and Plaintiffs' claims against Administrator Guzman in her individual capacity should be dismissed.

Dated: January 24, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Constitutional Tort Staff
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel, Constitutional Tort Staff
Torts Branch, Civil Division

*/s/ Juliana MacPherson Barrett*
Juliana MacPherson Barrett, Trial Attorney
NY Bar No. 5270848
U.S. Department of Justice

Civil Division, Constitutional Tort Staff
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044
T: (202) 616-4326; F: (202) 616-4314
Juliana.M.Barrett@usdoj.gov

*Counsel for Administrator Guzman*
*in her Individual Capacity*